HENRY ELFELD, as Administrator of the Estate of MATTHEW ELFELD, Deceased, Appellant, *v.* BURKHAM AUTO RENTING Co., INC., Respondent, et al., Defendants.

Argued April 13, 1949; decided July 19, 1949.

*Martin M. Kolbrener, Morton Feder* and *Joseph W. Winston* for appellant. I. The jury's findings that the truck was dangerously defective, that its hazardous condition caused the accident, and that deceased was free from contributory negligence, were amply supported by the evidence. (*Lee* v. *City Brewing Corp.,* 279 N. Y. 380.) II. Defendant auto renting company is liable at common law. (*Ferris* v. *Sterling,* 214 N. Y. 249; *Crawford* v. *Nilan,* 264 App. Div. 46; *Norris* v. *Kohler,* 41 N. Y. 42; *Elliott* v. *Hall,* 15 Q. B. D. 315; *MacPherson* v. *Buick Motor Co.,* 217 N. Y. 382; *Sobel* v. *O'Connor,* 293 N. Y. 924; *Lee* v. *City Brewing Corp.,* 279 N. Y. 380; *Christie* v. *Vineburg, Inc.,* 259 App. Div. 342.) III. Defendant auto renting company is liable under section 59 of the Vehicle and Traffic Law. (*Arcara* v. *Moresse,* 258 N. Y. 211; *Dittman* v. *Davis,* 274 App. Div. 836; *Eckert* v. *Farrington Co.,* 262 App. Div. 9, 287 N. Y. 714.) IV. The fact that deceased drove the car does not exclude him from the benefits of the statute if the legal user be found negligent. (*Cohen* v. *Neustadter,* 247 N. Y. 207; *Jackson* v. *Brown & Kleinhenz,* 273 N. Y. 365; *Reese* v. *Reamore,* 292 N. Y. 292.)

*Joseph F. Hanley* and *John W. Trapp* for respondent. I. No liability can be cast upon the auto renting company under the common law or under the provisions of section 59 of the Vehicle and Traffic Law and the complaint was properly dismissed. (*Arcara* v. *Moresse,* 258 N. Y. 211; *Good Health Dairy Products Corp.* v. *Emery,* 275 N. Y. 14; *Blake* v. *Salmonson,* 188 Misc. 97; *Woollcott* v. *Shubert,* 217 N. Y. 212; *Dean* v. *Metropolitan Elevated Ry. Co.,* 119 N. Y. 540; *Gochee* v. *Wagner,* 257 N. Y. 344; *Cherwien* v. *Geiter,* 272 N. Y. 165; *Mills* v. *Gabriel,* 259 App. Div. 60, 284 N. Y. 755.) II. Section 59 of the Vehicle and Traffic Law imposes liability upon the owner of a motor vehicle for negligence in the " operation " of the vehicle upon the highway, not for negligence in the " maintenance " of the

vehicle. (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388; *Elenkrieg* v. *Siebrecht*, 238 N. Y. 254; *Berkey* v. *Third Ave. Ry. Co.*, 244 N. Y. 84.) III. The complaint was properly dismissed for the skidding was the proximate cause created by the " negligent operation " of the driver on a wet road. (*Anderson* v. *Schorn*, 189 App. Div. 495, 231 N. Y. 590; *Digelormo* v. *Weil*, 260 N. Y. 192; *Lopez* v. *Campbell*, 163 N. Y. 340; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.)

LEWIS, J. This is a negligence action in which a judgment entered at Trial Term upon a jury's verdict in plaintiff's favor has been reversed at the Appellate Division on the law and the facts and the complaint dismissed on the law. The case reaches us upon an appeal by the plaintiff taken as of right from a judgment entered upon the order of the Appellate Division.

The plaintiff, as administrator of the estate of his son Matthew Elfeld, deceased, sues to recover damages for the death of the decedent who was killed by the overturning of a baker's delivery truck he was driving. Plaintiff claims the accident was due to the fact that the truck had a defect in its steering equipment and that its tires were worn so smooth as to constitute foreseeable danger from its operation.

Our inquiry goes — by a way made devious by subsidiary problems — to the ultimate question whether in the record at hand there is evidence which presents a question of fact from which a jury might find the defendant Burkham Auto Renting Co., Inc. — hereinafter referred to as Burkham — legally liable for damages resulting from the death of plaintiff's intestate.

For ten days prior to his death, the decedent had been employed as a driver-salesman for Pechter Baking Company — to which reference will be made as Pechter — and was assigned by his employer to truck No. 23 which was garaged in the Pechter plant on Cherry Street, New York City. During the early days of his employment with the Pechter company another salesman drove the decedent around a delivery route and explained his duties as a new salesman. For two or three days before the accident the decedent drove the truck himself but was accompanied by one of the Pechter supervisors who observed his qualifications as a salesman and driver. On the day of the accident the truck for the first time was driven by the decedent alone.

The accident occurred at about 11 o'clock in the morning of June 26, 1945, while the decedent was driving westerly along Metropolitan Avenue in New York City. As the truck passed the florist shop of the witness Drews, he observed its progress and testified at the trial that it appeared to be traveling about twenty miles an hour and seemed to be "out of control." He saw the truck start to skid, hit the right curb, and then skid to the left until he lost sight of it. During the time the truck was within Drews' vision he observed that the driver "was trying to control the steering wheel", "trying to get control of his wheel, going right and left, like that" (demonstrating). After the truck had passed from Drews' sight, he heard a crash and, upon investigation, found that the truck had overturned pinning the decedent beneath it. At the time of the accident the road was still wet from a rainfall earlier that morning.

Police officers soon reached the scene of the accident where the truck was examined by Detective Maurer and Lieutenant Andrews — members of the Queens County Motor Vehicle Homicide Squad. After stating that he [Detective Maurer] found the rear tires" bald " — meaning " no tread " — his further testimony was in part as follows:

" Q. State what examination you made with respect to the steering mechanism. A. When I first turned the wheel, I found excessive play.

" Q. Did you measure the play? A. Yes, with Lieutenant Andrews at that time, and then while he turned the wheel, I knelt and looked the chassis over and the parts involved in the steering. * * *

" Q. What did you find upon examination of those parts underneath the chassis? A. I found play, excessive play in all the joints.

" Q. How much play was there? A. Well, it would be in the fraction of an inch, but relayed to the steering wheel it will be a matter of inches.

" Q. How many inches off center was it when you examined it, from examining the wheel? A. I found the play to be six inches on either side of center. * * *

" Q. When you told us before that the truck that you examined showed a play of six inches off center, I ask you whether that means that where that steering wheel was making a right turn, for instance, that it would have to traverse twelve inches in order to make a left turn? * * * A. That's correct, sir.

" Q. * * * Can you give me an opinion — you told us that there was a play there of six inches off center, or a total of twelve inches, as you explained it to the jury. Can you give me an opinion with reasonable certainty, from your examination of the parts of the steering mechanism that was under the chassis, what caused the play? * * * A. Yes, I can.

" Q. What was it? * * * A. I say it was excessive wear of the parts involved. * * *

" Q. What was the competent producing cause of that skid and turning over? Will you tell us? A. Yes. I'd say the condition of the tires, the rear tires, the condition of the steering, the fact that the steering wheel had to traverse twelve inches before it could be — before the wheels would steer from one side to the other — I would say that was a competent producing cause."

There was also testimony by Lieutenant Andrews who measured the play in the steering wheel and found it to be " Six inches, each side of an imaginary center." He also described the effect of such play to be as follows: " * * * if the wheel were turned to the right and then you wanted to make a left turn from the point to the right where you had turned it, the wheel would move about twelve inches before it would affect the front wheels ".

The plaintiff also called Joseph McArdle, an expert witness, who testified in part as follows:

" Q. What is your opinion? Were this skid and overturning competently produced by those bald tires and the steering mechanism as I have described it to you? A. Yes.

" Q. Now, will you explain it? A. Well, I would say the skid is promoted by poor traction due to having bald tires on the rear, plus, I believe, that scene was a wet street * * *.

" Q. * * * What has the steering mechanism got to do with getting in and out of a skid? A. * * * Well, the lost motion that has taken place in the steering, to my estimation, would be loss of reactionary time in directing the vehicle in its true course to prevent it — or straighten it out.

" Q. So, in other words, if there weren't that play, would you have a quicker opportunity to straighten yourself out? A. That is true."

There was also testimony by McArdle that the defective condition of the truck as described by Lieutenant Andrews and Detective Maurer would not be brought about by the accident.

Despite evidence in the record to the contrary — which presented a question of fact — we think the evidence to which reference has been made was a sufficient basis for a finding by the jury that the truck being driven by the decedent was mechanically defective on the morning of June 26, 1945, when it was assigned to the decedent for use in making deliveries for his employer, Pechter, and — in view of the finding of decedent's freedom from contributory negligence, which is implicit in the verdict — that those defects were a competent producing cause of the accident which resulted in the decedent's death.

We are thus brought to the question whether, in the circumstances here presented, the defendant Burkham can be held liable for the damages resulting from the decedent's death and alleged to have been caused by the defective condition of the truck he was driving.

It is conceded that at the time of the accident the defendant Burkham was the registered owner of the truck. By virtue of such registration, plaintiff seeks to impose liability upon Burkham under section 59 of the Vehicle and Traffic Law and upon common-law principles. The position of the defendant is that no liability can be imposed on it — either under the statute or at common law — because at the time of the accident it was not in fact the owner of the truck. In explanation of that circumstance counsel for the defendant Burkham stated for the purposes of the record that in 1941 defendant leased and later sold its trucks to Cherry Bakeries, Inc.,* and that thereafter in April, 1944, its trucks, including the truck involved in this accident, were bought by the decedent's employer, Pechter. The defendant Burkham concedes, however, that — due to the rationing system then in effect — the new owners continued to register the truck here involved in the name of Burkham Auto Renting Co.

The plaintiff, as appellant before us, points to the fact that the above statements in behalf of the defendant Burkham relating to the sale of the truck are not based upon evidence of record but " are declarations made by the attorney for the defendant during the argument on motions ". Upon that phase of the case

---

* Cherry Bakeries, Inc., was originally a party defendant in this action. As to that defendant the complaint herein was dismissed at the close of all the evidence, upon consent of the plaintiff.

a close examination of the record discloses no evidence of a transfer of ownership of the truck. Lacking proof that title to the truck had actually been transferred, we hold that the defendant Burkham must be presumed to be the owner thereof under the rule of *Ferris* v. *Sterling* (214 N. Y. 249, 253): "The license number of the car, coupled with evidence that the defendant held the license, was *prima facie* proof that the defendant was the owner."

The record and applicable case law suggest an additional reason for holding Burkham to be the owner of the truck. In the *Ferris* case (*supra*) there was evidence that the registration of the car there involved in the name of a father rather than his son was a mistake. Not so, however, in the present case where no claim is made that the registration of the truck in Burkham's name from 1941 to 1945 was anything but intentional. In fact that inference is reinforced by the statement made in open court by defendant Burkham's counsel that the truck was deliberately "kept under the registration of the Burkham Auto Renting Company" because, due to rationing, the company "could operate only a certain number of trucks". In such circumstances, the rule of *Shuba* v. *Greendonner* (271 N. Y. 189) is applicable. There it was stated (per HUBBS, J., at pp. 193, 194): "We said in *Ferris* v. *Sterling* (214 N. Y. 249) that the registration of a vehicle by a person is *prima facie* evidence of his ownership. Further than that it was not necessary for us to go. In this case it is necessary to consider the question not there presented, whether one who has deliberately caused a car to be registered in his name as owner will be permitted, after it has been involved in an accident and caused injury, to deny the truth of that statement. * * *

"To permit the respondent to relieve himself of liability by proving that he was not in fact the owner of the automobile and thereby establish his illegal and fraudulent act in procuring its registration in his own name would be against public policy and would encourage fraudulent and illegal deceptions on the State in procuring the registration of automobiles in the names of persons who were not the owners thereof, directly in violation of the statute."

For the purposes of our present decision we conclude that the defendant Burkham must be considered the owner of the truck and that its disclaimer of ownership at the time of the accident does not — on the record before us — constitute a legal defense.

We pass then to the question — assuming ownership of the truck in Burkham: Is there a legal basis, under the facts of this case, for imposing liability upon the defendant Burkham for the death of the plaintiff's intestate?

As we have seen, the negligence with which defendant is charged is that the truck involved in the accident was assigned to the decedent for use on his sales route with the steering mechanism and the rear tires in such a defective condition as to create a foreseeable risk. The evidence also shows that the defects claimed — "bald tires" and "excessive play in the steering wheel" — were conditions brought about by long wear. Therefore, argues the defendant — and so the Appellate Division has ruled — section 59 *id.* is inapplicable because the purpose of that statute is to impose liability upon an owner for negligence in the *operation* of a vehicle on the highway but not for negligence in its *maintenance.*

Section 59 of the Vehicle and Traffic Law provides: "§ 59. *Negligence of operator other than owner attributable to owner.* Every owner of a motor vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

As we view the record of facts proven they present the question whether the owner Burkham, under the above-quoted statute, became legally responsible for the acts of Pechter which allegedly caused the accident here involved.

Clearly, on the day of the accident Pechter, with permission of Burkham, had put to its own use the truck it had assigned to the decedent for delivery purposes. Nor is there any claim that the use to which the truck was put in the delivery of Pechter's baked goods was contrary to directions given by Burkham, the registered owner, relating to its use. From these facts we may conclude that Pechter was "legally using" the truck within the meaning of section 59 of the Vehicle and Traffic Law. It is also clear that the registered owner of the truck (Burkham) may be held liable if Pechter — a legal user — is guilty of "negligence in the operation" thereof. In *Arcara* v. *Moresse* (258

N. Y. 211, 215) where section 59 was the subject of consideration, this court had occasion to state: " *   *   * To bind the owner, there must be ' negligence in the operation ' of the motor vehicle; but the negligent act may be performed either ' by any person legally using ' the motor vehicle, or by any person ' operating the same.' "

Our problem then is to determine whether Pechter as legal user of the truck assigned to the decedent, can be said to have been guilty of any " negligence in the operation " of that vehicle. It appears from the record that the truck was garaged in the Pechter plant from which place it was started each morning on its daily delivery route and to which place it was returned when the Pechter driver completed his work. It also appears that the truck was serviced under the supervision of mechanics in the employ of Pechter. One mechanic, the witness Lucarelli, who was in charge of inspecting the trucks, took them out each night to check them. If he found anything wrong with a truck, he did not assign it to a driver the next morning. Indeed, Lucarelli testified that he followed that procedure with truck No. 23 prior to its assignment to the decedent for his use on the day of the accident. Although Lucarelli testified that the truck was in good condition when he turned it over to the decedent, there is evidence by police officers who inspected the truck at the scene of the accident only a few hours later that the steering mechanism of the truck was defective and that there were no treads on the rear tires. The record also discloses evidence that the defective condition found by the police officers was a competent producing cause of the accident. As to the defective steering mechanism the testimony of the officers and of the witness McArdle as an expert was that the defect was not the result of the accident but was due to wear upon the parts involved. It also appears that this condition had not developed suddenly but had " accumulated over a period of time and mileage." Upon that subject McArdle testified:

" Q. *   *   * Is it possible that that clearance, that six-inch free play, in the driving wheel, could have occurred at the time this truck began to skid? A. I would say no to that.

" Q. How soon before that, in time, if you know, based upon your experience? A. In the mileage data? Would you accept it in mileage data?

"Q. Sure. Any way. A. I'd say to attain six inches, or approximately thereof, * * * 40,000 miles."

Concededly, the truck had been driven more than 54,000 miles. We regard the evidence as sufficient to justify a finding by the jury that when the truck was turned over to the decedent on the morning of the accident, by an authorized agent of Pechter — whose duty it was to assign a truck to decedent for use in making his route deliveries — it was in such a defective condition as to create a risk reasonably to be foreseen. By causing a defective truck to be assigned to decedent for use in the delivery of its baked goods, Pechter was guilty of an act of negligence in the operation of that truck for which Burkham, the registered owner, can be held liable under section 59 *id*. As we read that section it does not limit "negligence in the operation" to the manner in which a car is driven but is broad enough to include an act of "operation" such as the one here involved — viz., putting a defective truck into operation on the highway. This court has not limited "negligence in the operation" to negligence in the actual driving of the car. Thus in *Dittman* v. *Davis* (274 App. Div. 836, affd. 299 N. Y. 601) the legal user's "negligence in the operation" was the parking of a truck upon a public highway without lights or adequate warning to oncoming traffic. And in *Eckert* v. *Farrington Co.* (262 App. Div. 9, affd. 287 N. Y. 714) the owner was held liable because the legal user was found guilty of negligence in the operation of an automobile when, in the process of fixing a tire on the shoulder of the road, he failed adequately to protect the plaintiff who had offered his assistance.

We are thus led to conclude that the act of Pechter's agent, in placing a defective truck at the disposal of the decedent for use on the highways in covering one of that company's routes, can be considered negligence in operation, and that such negligent act having been committed by Pechter, a legal user of the truck, its registered owner, Burkham, can be held liable upon this record under section 59 of the Vehicle and Traffic Law.

Accordingly, the judgments should be reversed, and a new trial granted, with costs to abide the event.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and BROMLEY, JJ., concur.

Judgments reversed, etc.