Hart, J.
The defendant’s first ground of error is that the Common Pleas Court was without jurisdic *536 tion over the person of the defendant and erred in overruling his motion to quash the service and return of summons upon him. This complaint arises from the fact that the defendant, a resident of the state of Pennsylvania, was purportedly subjected to the jurisdiction of the Ohio court, not by summons served upon him while within the territorial jurisdiction of the court, but by substituted service made upon him in his home state of Pennsylvania pursuant to the provisions of Sections 6308-1 and 6308-2, General Code, effective since June 2, 1933, which are as follows:
Section 6308-1. “Any nonresident of this state, being the operator or owner of any motor vehicle, who shall accept the privilege extended by the laws of this state to nonresident operators and owners, of operating a motor vehicle, or of having the same operated, within the state of Ohio * * * shall, by such acceptance or licensure, as the case may be, and by the operation of such motor vehicle within the state of Ohio, make and constitute the Secretary of State óf the state of Ohio his, her, or their agent for the service of process in any civil suit or proceeding instituted in the courts of the state of Ohio against such operator or owner of such motor vehicle, arising out of, or by reason of, any accident or collision occurring within the state in which such motor vehicle is involved.”
Section 6308-2. “Such process shall be served, by the officer to whom the same shall be directed or by the sheriff of Franklin county, who may be deputized for such purposes by the officer to whom the service is directed, upon the Secretary of State of the state of Ohio, by leaving at the office of said secretary, at least fifteen (15) days before the return day of such process, a time and attested copy thereof, and by sending to the defendant, by registered mail, postage prepaid, a like true and attested copy thereof, with an en *537 dorsement thereon of the service upon said Secretary of State, addressed to such defendant at his last known address. The registered mail return receipt of such defendant shall be attached to and made a part of the return of service of such process.”
As a preliminary to defendant’s attack upon the method of service followed in the instant case, he claims that the service made did not comply with the statute which requires service to be made either “by the officer to whom the same shall be directed or by the sheriff of Franklin county, who may be deputized for such purposes.” (Italics supplied.)
In the instant case, the sheriff of Franklin county was deputized for such purpose and made service upon the Secretary of State but did not send to the defendant by registered mail a like, true and attested copy thereof. The mailing of the copy of process to the defendant was done by the sheriff of Trumbull county through a deputy. The defendant claims that such service could not be made in part by the deputized sheriff of Franklin county and in part by the sheriff of Trumbull county to whom the process was originally directed.
This court deems the claim of the defendant in this respect to be without merit. Under Section 6308-2, General Code, the sheriff to whom the process is directed may either himself make service upon the Secretary of State or he may deputize the sheriff of Franklin county to do so. In the instant case, the record shows that the Trumbull county sheriff received a summons for service pursuant to Sections 6308-1 and 6308-2, General Code; that on April 2, 1949, he deputized the sheriff of Franklin county to serve summons on the Secretary of State; that on April 11, 1949, the sheriff of Trumbull county received a return from the Franklin county sheriff with an affidavit *538 showing service of summons upon the Secretary of State; and that on April 13, 1949, the sheriff of Trumbull county mailed by registered mail a copy of process and a copy of the petition to the defendant and made full return of service on April 15, 1949, attaching thereto a return receipt signed by the defendant on April 14, 1949. This was the proper method of service of process under the statute. See Corbitt v. Stolwein, 17 F. Supp. (2d), 760. A somewhat similar state of circumstances was presented in the case of Hendershot v. Ferkel, 144 Ohio St., 112, 56 N. E. (2d), 205, except that in that case the registered letter was returned to the sheriff of the county wherein the case was pending, without any showing of delivery to the defendant.
On July 25, 1949, the defendant in the instant case filed a motion to quash service and return of summons, for the following reasons: ■
“1. Such service purports to have been had only under Section 6308-1 et seq. of the General Code of Ohio.
U # # #
“4. The defendant has not been personally served with a summons in the state of Ohio.”
This motion was overruled and defendant personally appeared for and participated in the trial of the case, thereby suffering no prejudice as to service of process.
The defendant claims further that substituted service authorized under the Ohio statute can be applied effectively only to those owners or operators of motor vehicles who accept the privilege, extended by the laws of Ohio to nonresident owners or operators, of operating a motor vehicle or having the same operated within this state and does not apply to an owner of a motor vehicle who merely permits another to operate it in the latter’s behalf. However, there was evidence in *539 this case that, as an incident of the operation of the trnck into and upon the highways of Ohio, the defendant was being transported on his way to his place of employment at Campbell, Ohio. Besides, the plaintiff’s mother testified that she had driven the truck to her parents’ home at the request of the defendant, and the record is clear that the defendant himself operated the truck at the moment of the accident and injury to the plaintiff. The claim of the defendant in this respect is not well taken.
The principal claim of the defendant is that the statute authorizing substituted service does not apply where, as in the instant case, the plaintiff is injured by the operator of a motor vehicle on private property and not on the public highways of this state; that the sole basis of the validity of the appointment of the Secretary of State as his agent for the purpose of service of process upon him was the exercise by him of the privilege of using the public highways of the state for the operation of the truck; and that when the truck was taken off the highway and placed on private property he was no longer amenable to the statute.
There is no limitation in the Ohio statute, as there is in the statutes of some other states, which makes it apply only in cases where the accident or collision occurs on a public highway. The triple purpose of this statute is to stimulate greater care upon the nonresident operator or owner of a motor vehicle, as a potentially dangerous instrumentality, while operating the same in this state; to obviate the inconvenience to a party injured by such operation of a motor vehicle of pursuing the offender in another state (although the latter reason by the strange set of circumstances does not apply in the instant case); and to enable the maintenance of an action for such *540 damages in a jurisdiction where the witnesses may ordinarily be available.
By the provisions of Section 6308, General Code, an action for injury to person or property caused by the negligence of an owner or operator of a motor vehicle residing in another county of the state may be brought in the county where the .injury occurs, and a nonresident operator or owner charged with such negligence may likewise be summoned from any county of the state as. a defendant in a suit instituted in the county where the negligent operation occurred. Similarly, this statute does not restrict its coverage to injuries which occur on a public road or highway. Neither Sections 6308-1 and 6308-2 nor Section 6308 discriminates against a nonresident operator or owner of a motor vehicle in favor of a resident operator or owner.
Closely related to the question of the construction of the statute in the respect here discussed is the further claim of the defendant that, if Sections 6308-1 and 6308-2, General Code, are to be so construed as to apply to the operation of a motor vehicle off the public highways, the judgment of the Court of Appeals in the instant case is erroneous and void because the statute is violative of Section 2, Artitcle IV, and Section 1, Article XIV, Amendments, Constitution of the United States, in that the statute deprives the defendant of the privileges and immunities of citizens of the several states as to his property and denies him the equal protection of the laws.
The defendant in this respect claims that substituted service under Sections 6308-1 and 6308-2, General Code, can be invoked only where the state has the power to regulate or forbid certain conduct of a citizen of another state in the operation of a motor vehicle *541 while within the state of Ohio, as a condition to which operation such citizen is held to have consented to the requirements of substituted service, and that in case of the operation of a motor vehicle within the state such consent can be deemed to have been given only by the use of a public highway over which the state has regulatory power.
Of course, the privileges and immunities of citizenship include the right of a citizen of one state to pass through or into another state for the purposes of pleasure, business or professional pursuits. But when citizens of another state bring into this state for operation instrumentalities which though not inherently dangerous to person or property are dangerous in operation unless due care is exercised, such operation becomes a proper subject matter for state regulation by means of licensing operators, compulsory inspection of vehicular condition, and regulations as to manner and method of operation. And, under such circumstances, the state may require submission to the jurisdiction of its local courts when damage is done to person or property resulting from the negligent operation of such instrumentalities.
Unquestionably, such jurisdiction extends to the operation of motor vehicles on the public highways of the state and, in the opinion of this court, it also extends to the operation of the motor vehicle operated on private property in private garages and on private parking lots as an incident to its operation on such highways.
Statutes which provide for service through the Secretary of State or other state officer upon a nonresident in cases arising out of his operation of a motor vehicle on a public highway have been held constitutional. Kane v. New Jersey, 242 U. S., 160, 61 L. Ed., 222; Hess v. Pawloski, 274 U. S., 352, 71 L. Ed., 1091; *542 Young v. Masci, 289 U. S., 253, 77 L. Ed., 1158, 88 A. L. R., 170.
If the regulation is one for the protection of the health, safety and welfare of those within its borders rather than a mere attempt to extend the jurisdiction of its courts over citizens beyond its borders, a state has the power to require amenability of nonresidents to statutes giving jurisdiction to local courts as to legal infractions within the realm of such regulation. Condon v. Snipes, 205 Miss., 306, 38 So. (2d), 752. In 42 American Jurisprudence, 67, Section 78, it is stated that “the trend of modern authority, however, seems in favor of the recognition of the power of a state to provide in proper cases for bringing in a nonresident individual who is doing business in the state of the forum by something other than personal service of process upon him within the state.”
In this connection, the court in the course of its opinion in the case of Hess v. Pawloski, supra, said:
“Motor vehicles are dangerous machines; and even, when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and nonresidents alike, who use its highways. The measure in question operates to require a nonresident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. Under the statute [of Massachusetts] the implied consent is limited to proceedings growing out of accidents or collisions on a highway in which the nonresident may be involved. It is required that he shall actually receive and receipt for notice of the service and a copy of the process. And it contemplates *543 such, continuances as may be found necessary to give reasonable time and opportunity for defense. It makes no hostile discrimination against nonresidents but tends to put them on the same footing as residents. Literal and precise equality in respect of this matter is not attainable; it is not required. Canadian Northern Ry. Co. v. Eggen, 252 U. S., 553, 561, 562.”
The statutes under consideration in the instant case relate only to the matter of venue. They do not confer a right of action, create a liability or enlarge general jurisdiction.
In the case of Sipe v. Moyers, 353 Pa., 75, 44 A. (2d), 263, the Supreme Court of Pennsylvania, by a unanimous decision, held that a statute, providing for service of process on a state officer in an action against a nonresident owner or operator of a motor vehicle arising out of its negligent operation within the state, authorized such service in an action against a nonresident driver and owner for injuries resulting from the negligent operation of a motor truck brought into the state over its highways, even though the accident occurred on private property and not on a public highway; and that such statute for substituted service as so construed was a constitutional exercise of police power, was not discriminatory, arbitrary or capricious, and did not deprive nonresident owners or operators of their property without due process of law. The text of the Pennsylvania statute under construction in that case is identical with that of Section 6308-1, General Code, except that “commonwealth of Pennsylvania” is substituted for “the state of Ohio,” and “Secretary of Bevenue” is substituted for “Secretary of State.” The defendant was a resident of the state of West Virginia and the accident and injury to the plaintiff occurred in the operation of defendant’s motor truck in moving it from one point to another *544 within the private premises of the Anchor-Hocking Glass Company in South Connellsville, Fayette county, Pennsylvania. The suit was instituted in Fayette county. There were a verdict and judgment for the plaintiff against the nonresident defendant summoned into the state through constructive service.
In affirming the judgment, the Supreme Court in the course of its opinion in that case said:
“The issue is whether a state may, in exercising its police power, subject nonresident motorists to extraterritorial service of process in an action arising out of an accident involving the motor vehicle of a nonresident brought into this state over the state highway, but where the cause of action arose off the highway on private property.
T0 PqPJ ^hat state power in this regard could not constitutionally be exercised to reach beyond the highway itself and encompass within its scope instances where the nonresident, after having entered the state over state highways, proceeds onto private property and there causes injury to another, would create an artificial and unreasonable distinction.
“The injury is alleged to have resulted from the negligent operation of appellants’ motor vehicle. The inherent danger accompanying the operation of motor vehicles is not restricted to highways. We may assume that the Legislature in enacting the Nonresident Motorist Act gave due consideration to such dangers and enacted a statute calculated to apply to the situation here presented. It is significant that the terms of the enactment do'not restrict its operation to actions arising from the use of the highway as did the Massachusetts statute in Hess v. Pawloski, supra. The Legislature has taken cognizance of the inherent danger of motor vehicles, the ease with which a nonresident may enter and leave the state by use of its public high *545 ways within a very short period of time, and the burden upon a resident or domiciliary were he required to travel to the domiciliary state of the nonresident to institute an action.
“The statute in question, reasonably adapted to remedy the evil, represents a constitutional exercise of the police power. It is not discriminatory, arbitrary or capricious. Appellants have not been deprived of property without due process of law, guaranteed to them by the Fourteenth Amendment of the Constitution of the United States. They have, by the act of using the highways of this commonwealth, made themselves amenable to our courts.”
To the same effect see Sugg v. Hendrix, 142 F. (2d), 740, where a Mississippi statute permitting substituted service upon “any nonresident * * * who shall do any business or perform any character of work or service in this state” was applied to nonresidents of Mississippi engaged in levee construction work of large proportions requiring many men and much machinery for the purpose.
In the case of Leighton v. Roper, Admr., 300 N. Y., 434, 91 N. E. (2d), 876, 18 A. L. R. (2d), 537, Section 52 of the New York Vehicle and Traffic Law, as amended in 1945, providing that “the operation by a nonresident of a motor vehicle * * * in this state, or the operation in this state of a motor vehicle * * * owned by a nonresident if so operated with his consent, express or implied, shall be deemed equivalent to an appointment by such nonresident of the Secretary of State to be his true and lawful attorney upon whom may be served the summons in any action against him, growing out of any accident or collision in which such nonresident may be involved while operating a motor vehicle in this state or in which such motor vehicle * * * may be involved while being operated in this *546 state with the consent, express or implied, of such nonresident owner,” was under consideration as to its constitutionality so far as it related to venue and process affecting a nonresident decedent’s executor or administrator. The cause of action arose by reason of a collision involving decedent’s automobile operated by himself on a New York highway, but significantly, in a 1942 amendment of the statute, the Legislature had substituted the words, “in this state,” for the words, ‘ ‘ on such a public highway, ’ ’ previously contained in the statute. Clearly, in the elimination of the specific term, highway, a word of limitation, from the statute, the express purpose of the amendment was to enlarge the scope of the statute so as to render it applicable to accidents arising out of the operation of a nonresident’s motor vehicle anywhere in the state either on or off its highways. The court held that the statute as amended “is a valid exercise of police power, and is not in conflict with due process.” The court, in the course of its opinion, said:
“ * * * has the appellant consented to be sued here ? Of course he has not, but, by virtue of the statute now before us, his intestate has consented to the statutory agency for the receipt of process, and has made that consent binding upon this administrator. He signified that consent when he drove his automobile into this state, and it was indisputably binding upon him, personally * * *.
“* * * When decedent came upon the highways of this state with his automobile, he subjected himself to our jurisdiction, and consented, while here, irrevocably to bind his legal representative in an action arising out of any accident in this state in which his automobile was involved.” (Italics supplied in part.)
It is to be noted that certain cases cited by the defendant are to be distinguished from the instant case *547 either because the statute permitted the application of substituted service in actions involving accidents only on the public highways, or because the accidents occurring off the public highways were not due to the operation of the motor vehicle.
In the case of Hess v. Pawloski, supra, a Massachusetts statute was involved wherein its operation was limited to cases where the accidents causing injuries arose in the operation of motor vehicles by nonresident owners or operators on the public highways of that state. In that case the accident occurred in operation on the public highway by the owner, and a judgment against him was affirmed.
In the case of Ellis v. Georgia Marble Co., 191 Tenn., 229, 232 S. W. (2d), 45, the accident causing the injuries did not occur while the vehicle was being operated but while it was at rest and being unloaded, and the statute of Tennessee limited the operation of substituted service to cases where the accidental injury occurred while the motor vehicle was being operated on the public highways of that state.
In the case of Kelley v. Koetting, 164 Kan., 542, 190 P. (2d), 361, the court held that the statute providing for substituted service upon nonresidents in cases arising out of the operation of their motor vehicles on the public highways of that state did not apply to the operation of a combine harvester in a wheat field in such manner as to set fire to and destroy 21 acres of standing wheat.
In the case of Brauer Machine & Supply Co. v. Parkhill Truck Co., 383 Ill., 569, 50 N. E. (2d), 836, 148 A. L. R., 1208, under a statute limiting the application of substituted service to actions growing out of the “use and operation * * * of a motor vehicle over the highways of the state,” the court held that the statute did not apply to an accident in the unloading of a truck off the public highway.
*548 In the case of Mulligan v. Jersey Truck Renters, 95 N. Y. Supp. (2d), 232, the court held that the service of summons on a nonresident motorist pursuant to the statute did not apply where the injury arose solely from the negligent unloading of a motor vehicle wholly unrelated to its operation. To the same effect are Finn v. Schreiber, 35 F. Supp., 638, and Brown v. Hertz Drivurself Stations, Inc., 116 N. Y. Supp. (2d), 412.
The defendant claims that he is entitled to a reversal of the judgment and a new trial because the trial court erred in permitting a medical witness to testify as to a mere possibility of future injurious consequences which might be suffered by the plaintiff. The witness testified, in answer to a question as to whether an injury of the character in question might affect the plaintiff in after years, that “it is very possible it might.” On objection, this testimony was stricken and the jury instructed to disregard it. The witness was then asked the question: “In your experience, if you have had similar cases over a period of years, has there been any symptoms or loss of hearing or head aggravation from injuries of this kind?” He answered, “well there certainly have been, in my experience anybody suffering head injuries is apt to show injuries, traumatic injuries.”
In using the, word, “apt,” meaning “likely,” the witness testified to more than a mere possibility. In view of the severity of plaintiff’s injuries and the reasonableness of the amount of the verdict, we do not believe the defendant suffered any prejudice in this respect.
The defendant complains of error in the refusal of the court to give the following requested charges before argument:
“VI. If Nellie Paduchik, the mother of the plain *549 tiff, or any other person than the defendant Mikoff was in any manner negligent upon the occasion alleged in the amended petition, and such negligence directly and proximately operated in the slightest degree to cause the injuries of which the plaintiff complains independent and exclusive of any wrongful act or negligence on the part of the defendant Mikoff, then your verdict must be for the defendant.”
“VII. If Nellie Paduchik, mother of the plaintiff, or his father, or both of them, were in any manner negligent upon the occasion alleged in the amended petition, and such negligence was the sole direct and proximate cause of the injuries of which the plaintiff complains, then your verdict must be for the defendant. ’ ’
Requested charge No. VI is not a clear statement of the law, because it is obscure and indefinite.
As to charge No. VII, neither the requested charge nor the answer of the defendant to the amended petition sets out any claimed specific act of negligence on the part of the father or mother of the plaintiff which contributed to plaintiff’s injury, and in this respect the request to charge is too indefinite and uncertain. On the .other hand, in view of the fact that the defendant himself testified that the,movement of the truck against the plaintiff was caused by the defendant’s own mistake in stepping upon the starter, the state of the record does not make either of the requested charges applicable. This court finds no prejudicial error in this respect.
The defendant complains also that certain alleged errors were committed by the court in its general charge to the jury. Although the charge is not entirely free from criticism, this court in considering it as a whole does not deem such claimed errors so prejudicial as to warrant a reversal of the judgment. *550 Especially is this true where, as here, the court inquires of counsel whether there are “other questions, additions or subtractions that counsel have before I complete the charge,” whereupon counsel for the defendant requests only that the court charge “that an automobile is not a dangerous instrumentality under the law” and the court does charge as requested.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Zimmerman and Stewart, JJ., concur.
Middleton and Taft, JJ., concur in paragraphs one and two of the syllabus, but dissent from the judgment.