No. 37,062

Laurel D. Kelley, *Appellant*, v. Leo Koetting, *Appellee.*

(190 P. 2d 361)

Opinion filed March 6, 1948.

*Harry K. Allen*, of Topeka, argued the cause, and *L. M. Ascough*, of Topeka, and *Lloyd H. Vieux*, of Atwood, were with him on the briefs for the appellant.

*E. S. Hampton*, of Salina, argued the cause, and *B. I. Litowich*, *La Rue Royce*, *H. H. Dunham, Jr.*, all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This is an appeal from a judgment quashing service of process.

The action was commenced in an attempt to recover a personal judgment for damages by substituted service under the provisions of Laws 1935, chapter 72 (G. S. 1935, 8-401 and 402), providing for suits and service of process against nonresidents in cases arising out of the operation of their motor vehicles within the state of Kansas.

On matters pertinent to the issues involved the petition alleges that defendant, a resident of Texas, who had operated his automobile upon the public highways of Kansas and was a professional combine harvester engaged in the cutting of plaintiff's wheat, neg-

ligently drove such motor vehicle into a wheat field belonging to plaintiff with the result that he set fire to and destroyed approximately 21 acres of uncut wheat then and there standing upon such field.

Following the filing of the petition and an attempt to procure substituted service the defendant filed a motion to quash which reads:

"Comes now Leo Koetting named as defendant in the above entitled action appearing specially for the purpose of this motion only and for no other reason whatsoever and moves the court to quash the purported service improvidently made in said action for the reasons that such service purports to comply with the provisions of G. S. 1935, 8-401 and 402, but said statute applies only to actions growing out of the use or operation of a motor vehicle on a highway and said petition shows on its face that plaintiff's claimed damages occurred at and on land owned by the plaintiff, to-wit: wheat field."

Although appellant states the only question presented for review by his one specification of error is whether the trial court erred in sustaining the motion to quash service he bases his right to a reversal of the judgment upon two grounds.

It is first contended that regardless of the principal question whether personal jurisdiction of appellee could be and was acquired under and by virtue of the involved statute the motion to quash as filed was in effect a general demurrer to the petition and therefore the equivalent of an entry of appearance for all purposes of the action. It must, of course, be conceded the rule in this jurisdiction is that where the court has jurisdiction of the subject matter in civil actions questions pertaining to lack of jurisdiction over the parties or the res are waived by the filing of any plea raising nonjurisdictional questions and involving the merits of the cause. See the recent case of *State v. Greer*, 164 Kan. 255, 188 P. 2d 918, and cases there cited. Likewise, there can be no question but what a motion to quash containing allegations amounting in substance to a demurrer has the effect of a general appearance (*King v. Ingels*, 121 Kan. 790, 250 Pac. 306). Even so appellant's contention cannot be sustained. The instant motion does not attempt to test the sufficiency of the petition as a pleading. All the appellee contemplated by its terms was the contesting of service upon strictly jurisdictional grounds. The most that can be said for appellant's claim is that certain allegations of the motion point out the facts relied on as requiring the quashing of service. In that situation it cannot be regarded as tantamount to a demurrer.

In *Sage v. Oil Country Specialties Mfg. Co.*, 138 Kan. 501, 27 P. 2d 542, we held:

"Where a defendant in an action appears specially for the purpose of filing a motion to quash the summons on the ground that it was not served on any proper representative of defendant, the fact that one of the reasons alleged in the motion is that the action was improperly instituted in the county does not constitute the motion a general appearance so as to waive the defect in the service of summons." (Syl. ¶ 2.)

See, also, *Shearer v. Insurance Co.*, 106 Kan. 574, 189 Pac. 648, which holds:

"A general appearance is not effected by the insertion, in a motion to set aside the service of summons, of allegations concerning some of the facts on which the plaintiff's claim is founded, which are made because of their bearing upon the validity of the service, and which are material to that question." (Syl. ¶ 3.)

If an additional reason for the propriety of the procedure followed by appellee is needed it appears by suggesting that under the statute (G. S. 1935, 8-401, 8-402) acquisition of jurisdiction by service of process authorized by its terms depends upon what is disclosed on the face of the petition itself.

The second and all-important ground relied on by appellant for reversal of the judgment requires a construction of the statute to which we have heretofore referred, without which it must be conceded no action could be maintained against appellee in this state unless personally served with summons within its boundaries. Therefore, quotation of its pertinent provisions is essential.

G. S. 1935, 8-401, reads:

"That the acceptance by a nonresident person of the rights and privileges conferred by existing laws *to operate motor vehicles on the public highways of the state of Kansas, or the operation by a nonresident person, or his authorized chauffeur, or agent, of a motor vehicle on the said highways,* other than under said laws, shall be deemed equivalent to an appointment by such nonresident of the secretary of state of the state of Kansas, or his successor in office, to be his true and lawful agent, upon whom may be served all lawful process *in any action or proceeding against said nonresident, growing out of any accident or collision in which said motor vehicle may be involved, while same is operated in the state of Kansas by said nonresident,* or by his authorized chauffeur or agent; and said acceptance or operation of said vehicle shall be a signification of his agreement that any such process against him which is so served on the secretary of state shall be of the same legal force and validity as if served upon him personally within the state." (Emphasis supplied.)

So far as here important G. S. 1935, 8-402, provides:

"The manner of procuring and serving process in any cause, brought pur-

suant to the preceding section, shall be as follows, to wit: The plaintiff shall file a verified petition in one of the district courts of the state, in the county where the cause of action arose or the plaintiff resides, showing a cause of action against the defendant *of the class contemplated in section 1* hereof; and shall further show in said petition, or by affidavit, to the satisfaction of the judge of said court, that the defendant is one of the persons contemplated in section 1, and the residence of said defendant, and a description of the car or motor vehicle claimed to have been operated by the said defendant, or his agent, as near as the same can reasonably be ascertained by the plaintiff; and the time, place and nature of such accident, or injury. . . ."

At the outset it should be said it is not denied that service was had upon appellee in the manner and form contemplated by the statute if applicable to a proceeding dependent upon the existence of a factual situation such as is set forth in the petition.

Appellant contends that in enacting the sections of the statute just quoted it was the intent and purpose of the legislature to provide a method whereby nonresidents who bring motor vehicles into Kansas over its highways and negligently operate them, either on the highways or off the highways and upon private property, can be brought into the Kansas courts to answer for loss or injury resulting from such action. Appellee's claim is that it was the intention of such law making body to limit the scope of the enactment to accidents or collisions in which nonresidents might be involved while operating their motor vehicles on the highways and that then, and only then, was it contemplated they were to be subjected to process under and by virtue of the terms of such statutory enactment. We confess a casual examination of the statute seems to afford some basis for sound argument supporting either contention and therefore proceed with a more detailed analysis of its terms and provisions for the purpose of ascertaining whether the intent and purpose of the legislature in enacting it is ascertainable from the language to be found therein. As we do so, we pause to comment the force and effect of our own statute has not as yet been passed upon. Likewise add that but one decision construing a statute containing somewhat identical language has been cited as a precedent by either party. This perhaps is due to the fact that by far the great majority of statutes of other states providing for constructive or substituted service upon nonresident motorists limit, by express language, proceedings of the character here involved to accidents or collisions arising or growing out of their use of public highways. Substantiation for this statement appears on reference to the numerous decisions, and statutes therein involved, to be found in West's

5th Decennial Digest, "Automobiles," § 235; 35 A. L. R., anno. 951; 57 A. L. R., anno. 1239; 82 A. L. R., anno. 768; 96 A. L. R., anno. 594; 125 A. L. R., anno. 457; 148 A. L. R., anno. 1217.

Many of the decisions to which reference has just been made have been cited by the diligent and capable counsel for each of the parties but we find them of little, if any help, in solving our problem for the obvious reason determination of whether the legislature in our statute contemplated the inclusion of accidents of every character, both on and off the highways, presents a question entirely foreign to those involved where statutes possessing some like characteristics but concededly limited in their scope to proceedings involving accidents springing from use of the highway itself are to be construed.

The one case to which we have heretofore referred is cited by appellee in support of his position. It is *Brauer Supply Co. v. Truck Co.*, 383 Ill. 569, 50 N. E. 2d 836, 148 A. L. R. 1208, involving construction of section 20a of the Illinois motor vehicle act, which reads:

"The use and operation by a non-resident of a motor vehicle over the highways of the State of Illinois, shall be deemed an appointment by such non-resident of the Secretary of State, to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him, growing out of such use or resulting in damage or loss to person or property, and said use or operation shall be a signification of his agreement that any such process against him which is so served; shall be of the same legal force and validity as though served upon him personally." (Ill. Rev. Stat. 1945, ch. 95½, par. 23.)

To merely read the foregoing act makes it apparent a decision construing its terms cannot be entirely decisive of the case at bar. Even so its opinion contains much that is persuasive. There it was said:

"The provisions of section 20a of the Motor Vehicle Act limit the appointment of the Secretary of State, by the use of the highways by nonresidents, as attorney on whom process may be served, to actions or proceedings growing out of the use of the highways of this State. The addition of the words, 'or resulting in damage or loss to person or property' was not intended to include another and different class of actions. Those words do not, in our opinion, enlarge or extend the act to cases where 'such damage or loss to person or property' does not result from the use of the highways. The subject of the section is the appointment, by nonresidents operating motor vehicles on the highways of this State, of an agent on whom process may be served. It provides that 'the use and operation by a nonresident of a motor vehicle over the highways of the State of Illinois shall be deemed an appoint-

ment by such non-resident of the Secretary of State to be his true and lawful attorney, upon whom may be served all legal process in any action or proceeding against him, growing out of such use, or resulting in damage or loss to person or property.' The section then declares, 'that said use or operation shall be a signification of his agreement that any process against him which is so served, shall be of the same legal force and validity as though served on him personally.' The words 'or resulting in damage or loss to person or property' refer only to damage or loss growing out of the use of the highways, as specifically limited by the preceding language of the section. These general words must be limited by the particular and specific words which precede them. The general words must be construed to include only actions for damages growing out of the use of the highways as indicated by the specific words which they follow (citing cases).

"The constitutionality of a similar statute of the State of Massachusetts was sustained by the Supreme Court of the United States on the ground that the implied consent of a nonresident, by the use of the highways, to the appointment of an attorney for service of process, was limited to proceedings growing out of accidents or collisions on a highway in which the nonresident may be involved. *Hess v. Pawloski*, 274 U. S. 352, 47 S. Ct. 632.

"We think it is clear from the opinion in that case that a statute providing for such substituted service, if not limited to actions or proceedings growing out of accidents or collisions on the highways, would be invalid under section 2, article IV, of the Federal constitution.

"The language of our statute is clear that such service can only be resorted to in actions or proceedings to recover damages or loss to persons or property, growing out of the use or operation, by a nonresident, of a motor vehicle on the highways of this State. To be valid under the above decision, this statute must be construed as limiting the substituted service therein provided for to actions or proceedings for the recovery of damages growing out of accidents or collisions occurring on the highways of this State. The argument that the effect of this construction is to limit the operation of the statute to the area within the boundaries of the highways, does not militate against this view. The statute, to be valid, must necessarily be so limited. This, of course, does not mean that the effect of the causative force from which the damages flow must actually be limited to the confines of the highway. It must, however, grow out of the use or operation of a motor vehicle on the highway. If the injury or damage claimed results from the use and operation of a motor vehicle on the highways, then the place where the injury or damage to the person or property of another actually occurred would be wholly immaterial. It is only necessary that the causative force originate in the use or operation of the vehicle on the highway. . . . It makes no difference where the injury actually occurs if it may be attributed to the use of the highway and naturally flows therefrom.

"Here, the truck had left the highway prior to the time the process of the unloading was begun. Both the truck and the load were entirely off the highway and wholly upon private property at the time the injury occurred. The negligent act which is alleged to have caused the injury was in no way connected with the use of the highway. It, in no sense, arose or grew out of the

use of the motor vehicle on the highway. The causative force which caused the injury to Lindstrom did not originate on the highways, nor can it be attributed to the use or operation of the motor vehicle on the highway. . . . To extend the operation of the statute to all the acts incident to the contract of transportation, without any limit as to the causative force or the time or place where the injury occurred, would give it a construction which would violate the privileges-and-immunities clause of the constitution of the United States (sec. 2, art. IV,) and render the section, in this respect, invalid.

"The language of the statute does not warrant such construction. Entirely aside from any constitutional restrictions, the language of the section of the Motor Vehicle Act here involved clearly limits the right to service of process on the Secretary of State to actions where the injury or damage results from the use and operation of a motor vehicle, by a nonresident, on the highways of this State. This case does not come within the class of actions comprehended within the provisions of section 20a of the Motor Vehicle Act. The trial court did not err in quashing the service." (pp. 581, 583.)

After a careful examination of our own statute we have little difficulty in concluding its aim is to facilitate the enforcement of civil remedies by those injured in their person or property from the negligent operation by nonresidents of motor vehicles upon the highways of this state. The preliminary provisions of G. S. 1935, 8-401, heretofore emphasized clearly demonstrate that what the legislature had in mind was the operation of motor vehicles on the highways. Subsequent language, particularly the words hereafter underlined for emphasis, which reads "growing out of an accident or collision in which *said motor vehicle* may be involved, while *same* is operated in the state of Kansas by *said* nonresident" reveals continued reference to that aim and indicates an intent to so limit the operation of the act. Further indication of such an intention is found in the phrase "of the class contemplated in section 1" as it appears in G. S. 1935, 8-402, otherwise its insertion in such section constitutes useless and meaningless action on the part of the legislature. In the absence of legislative recognition there was more than one class of collisions and accidents in which nonresident motorists could be involved while in the state there was absolutely no necessity for the use of such phrase. In our opinion the words "out of any accident or collision" do not have the effect of enlarging or extending the act so that accidents or collisions in which a nonresident motorist is involved while exercising the privilege accorded all citizens, resident or nonresident, of transacting personal business on private property are to be regarded as within the scope of its provisions. Support for this conclusion is to be found in *Madden v. Truckaway Corpora-*

*tion,* 46 F. Supp. 702, where in construing an analogous phrase the court held that by use of the words "in any proceeding at law or equity brought against such carrier" in the interstate commerce act, authorizing service of process upon an agent appointed in each state in which a motor carrier was authorized by the interstate commerce commission to operate, congress necessarily implied that such proceedings must arise under, or be in connection with or in relation to the activities of the carrier in interstate transportation.

Our construction of the involved act makes it unnecessary to pass upon appellee's contention it would be unconstitutional if construed to permit service on nonresidents in proceedings not arising from negligent use of the highways. All we need say on the point is that support for their position is to be found in the authorities (*Finn v. Schreiber,* 35 F. Supp. 638; *Brauer Supply Co. v. Truck Co.,* supra; *Wuchter v. Pizzutti,* 276 U. S. 13, 72 L. Ed. 446, 48 S. Ct. 259, 57 A. L. R. 1230; *Hess v. Pawloski,* 274 U. S. 352, 71 L. Ed. 1091, 47 S. Ct. 632).

The judgment is affirmed.

SMITH, J. (dissenting): I find myself unable to concur in syllabus 2 and the corresponding part of the opinion. After a careful reading of G. S. 1935, 8-401, I am unable to persuade myself that the statute was intended to apply only to accidents upon the highways. I do not think a general reading of the entire act sustains that view either. My idea is that the legislature recognized what we all know, that is, that the automobile is a dangerous agency. In careless hands it kills people on the highways, driveways and in garages and sets fire to wheat fields and buildings. Because we see so many of them we are prone to lose sight of the fact that in the hands of careless drivers they are a menace. That, I think, is the reason the legislature enacted this statute so that one could not come into Kansas with an automobile which will leave a trail of death, devastation and destruction in his wake and escape liability because the injured parties would have to go to the driver's home state to sue him.