[Civ. No. 16841. First Dist., Div. One. Nov. 3, 1955.]

PAUL J. SCHEFKE, Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents; MABEL S. BRUGHELLI et al., Real Parties in Interest.

Healy & Walcom for Petitioner.

No appearance for Respondents.

Ryan & Ryan for Real Parties in Interest.

BRAY, J.—In an action for damages for injuries alleged to have been received by plaintiff Mabel S. Brughelli against petitioner Paul J. Schefke, when petitioner, a resident of Oregon vacationing in California, backed his automobile into plaintiff on the premises of Standard Stations, Inc., at Lombard and Pierce Streets, San Francisco, petitioner was served as a nonresident pursuant to the provisions of section 404, Vehicle Code. He appeared specially to challenge the jurisdiction of the trial court. That court determined that the service was valid. Petitioner then filed this petition for writ of prohibition or certiorari or mandate.*

### QUESTION PRESENTED

Where a nonresident's motor vehicle is on service station premises in this state to be serviced and there causes

---

*Prohibiton is a proper remedy to test the jurisdiction of the trial court under circumstances of this kind. (*McDonald* v. *Superior Court,* 43 Cal.2d 621, 622 [275 P.2d 464].)

an accident, is such accident, under the provisions of section 404, Vehicle Code, one "resulting from the operation of any motor vehicle upon the highways of this State . . ."?

LAW APPLICABLE

Section 404, Vehicle Code, provides: "The acceptance by a nonresident of the rights and privileges conferred upon him by this code or any use of the highways of this State as evidenced by the operation by himself or agent of a motor vehicle *upon the highways* of this State . . . is equivalent to an appointment by such nonresident of the director or his successor in office to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against said nonresident operator or nonresident owner growing out of any accident or collision resulting from the operation of any motor vehicle *upon the highways* of this State by himself or agent." (Emphasis added.)

The only case in this state considering the meaning of the words "operation . . . upon the highways" is *McDonald* v. *Superior Court*, 43 Cal.2d 621 [275 P.2d 464]. There a resident of Oregon was engaged in California in the business of renting trucks and trailers. The plaintiff rented from him a truck to transport furniture to his home. He parked the truck partially on the street and partially on the sidewalk and proceeded to unload it. Due to a defective condition, he was injured when a rack on the truck broke. It was contended that unloading was not part of the operation of the vehicle. The court held that renting a truck for immediate use upon the highways constituted an "operation" of the truck, within the meaning of section 404, and that, under that section the "normal operation of a vehicle includes more than its movement over the highway" (p. 624) and included unloading. "Although the meaning of the word 'operation' in section 404 has not been litigated in this state, in other contexts, contrary to decisions in other states [citations], it has been interpreted to include more than the actual physical driving of a vehicle on the highway. [Citations.] The renting of a vehicle for immediate use clearly constitutes the initiation of its operation and, in the event the vehicle is defective, the creation of an unreasonable risk of harm to the lessee and third parties. The statute does not require that the accident occur during the time that the vehicle is being operated by the nonresident or his agent. It is enough that the accident results from such operation. When, as in this case, the accident would not have occurred but for the negligent renting

of a defective vehicle, it clearly resulted from such renting. To hold that such renting does not constitute operation would defeat the legislative purpose of making nonresidents who use our highways in their business amenable to suits in this state. To interpret operation to include such renting is both consistent with the terms of the statute and subserves its purpose. We. conclude therefore that petitioner's agents operated the truck within the meaning of the statute when they rented it for immediate use upon the highways of this state. [Citations.]

"Petitioner contends, however, that an accident occurring during unloading is not the type of accident intended to be covered by section 404. We cannot agree with this contention. It has frequently been recognized that the normal operation of a vehicle includes more than its movement over the highway. [Citations.] There is nothing in the statute that limits its operation to any particular types of accidents or collisions. By its express terms it is applicable to 'any action . . . growing out of any accident or collision resulting from the operation of any motor vehicle upon the highways of this State by himself or agent.' " (Pp. 624-625.)

In other contexts California has been liberal in its interpretation of the word "operation." Thus in *Sutton* v. *Tanger,* 115 Cal.App. 267 [1 P.2d 521], it was held that the owner of a motor vehicle was "operating" it although not present, and the driving was by a person to whom the owner's permittee had temporarily entrusted it. In *Bosse* v. *Marye,* 80 Cal.App. 109 [250 P. 693], it was held that a minor was "operating" the automobile although it was being driven by another at the minor's request. In *Union Tank Line Co.* v. *Richardson,* 183 Cal. 409 [191 P. 697], it was held that a foreign corporation engaged in the acquiring of tank-cars and leasing them to shippers to use upon the railroads of this state, was "operating upon railroads" in California.

In *McGuire* v. *Parker* (Dist. Ct. Mo., 1948), 78 F. Supp. 199, it was held that a person lending his car to minors was "operating" it within the meaning of a statute providing for service of summons on a nonresident operating a motor vehicle within the state.

This liberality of construction does not obtain in some other jurisdictions. Thus in *O'Tier* v. *Sell* (1930), 252 N.Y. 400 [169 N.E. 624], it was held that an owner was not "operating" a motor vehicle when it was being driven by another even though with his permission. (To the same effect, *Brown*

v. *Cleveland Tractor Co.* (1933), 265 Mich. 475 [251 N.W. 557].)

Other jurisdictions have held as did the court in *McDonald* v. *Superior Court, supra,* 43 Cal.2d 621, 624, that "the normal operation of a vehicle includes more than its movement over the highway." Thus in *Elfeld* v. *Burkham Auto Renting Co.* (1949), 299 N.Y. 336 [87 N.E.2d 285, 13 A.L.R.2d 370], in applying a statute making an owner liable for "negligence in the operation of . . . [a] motor vehicle" the court said, referring to the above mentioned statute (p. 290 [87 N.E.2d]) : ". . . it does not limit 'negligence in the operation' to the manner in which a car is driven but is broad enough to include an act of 'operation' such as the one here involved— putting a defective truck into operation on the highway."

In *Commonwealth* v. *Henry* (1918), 229 Mass. 19 [118 N.E. 224], it was held that an automobile left standing on a highway after dark without lights was "operated" within the meaning of a statute prohibiting the operation of an automobile at night on public streets without certain lights. "The word 'operated' is not, as the defendant contends, limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation." (P. 225.) (To the same effect, *Horton* v. *Benson* (Tex.Civ.App., 1924), 266 S.W. 213.)

In *Stoud* v. *Board of Water Comrs.* (1916), 90 Conn. 412 [97 A. 336], it was held that an automobile left in a part of the highway opposite a hotel which was commonly used for parking automobiles was in "operation" under a statute denying recovery to the owner of an unregistered motor vehicle who has an accident "by reason of the operation of said motor vehicle in or upon the public highways. . . ."

In *Chiarello* v. *Guerin Special Motor Freight* (1952), 22 N.J.Super. 431 [92 A.2d 136], it was held that a truck parked entirely on the sidewalk was being "operated" within the terms of a non-resident service statute. The court quoted from a case decided in 1889 before the advent of motor vehicles: " 'In order to be a traveler, it is not necessary that one should be constantly moving, if he is a pedestrian, or that the vehicle he drives, or that in which he is conveying goods, if he is using one, shall be continuously in motion. It would certainly be impossible to use the highways conveniently for the ordinary purposes of business or social life, with teams or lighter carriages, if occasional stops were not

permitted to enable those using them to load and unload teams, to receive and deliver goods, to enter shops and stores, and to make brief calls of business, or even of a special character.' '' (P. 139 [92 A.2d].) *Hand* v. *Frazer* (1931), 139 Misc. 446 [248 N.Y.S. 557], held that a truck parked by a highway was being ''operated'' within the terms of its nonresident service statute. In *Brauer Machine & Supply Co.* v. *Parkhill Truck Co.* (1943), 383 Ill. 569 [50 N.E.2d 836], the court was considering whether the accident (the plaintiff was injured by the negligent unloading of a truck at a place off the highway) came within the purview of the Illinois nonresident service statute as constituting ''operation'' of a motor vehicle on a highway of the state. In holding that unloading did not constitute operating the truck within the meaning of the statute (*Bryant Truck Lines* v. *Nance* (1939), 199 Ark. 556 [134 S.W.2d 555, 556]; *Ellis* v. *Georgia Marble Co.* (1950), 191 Tenn. 229 [232 S.W.2d 45, 48]; *Mulligan* v. *Jersey Truck Renters* (1949), 196 Misc. 828 [95 N.Y.S.2d 232] are to the same effect) the court said that the fact that the truck was not on the highway was not important, that ''If the injury or damage claimed results from the use and operation of a motor vehicle on the highway, then the place where the injury or damage to the person or property of another actually occurred would be wholly immaterial. It is only necessary that the causative force originate in the use or operation of the vehicle on the highway. . . . It makes no difference where the injury actually occurs if it may be attributed to the use of the highway and naturally flows therefrom.'' (P. 843 [50 N.E.2d].)

Petitioner places great reliance upon the Brauer case, *supra.* It should be pointed out that in that case the court in addition to holding that the Illinois nonresident service statute did not apply where the accident occurred on private property, held that unloading a truck did not constitute ''operation'' of a motor vehicle. The McDonald case, *supra,* expressly referred to the Brauer case and held exactly to the contrary as to the latter matter, thus showing the considered opinion of our Supreme Court that our statute should be more broadly interpreted than did the Illinois court interpret its statute. Moreover, the Brauer case stated that it makes no difference where the injury actually occurs if it may be attributable to the use of the highway and naturally flows therefrom. While the court there did not have in mind a situation such as here, nevertheless the last mentioned prin-

ciple would apply to it. The servicing of a car in a service station is a necessary concomitant of the operation of the car on the highway and results from it.

Where the nonresident service statute refers to accidents resulting from operation of a motor vehicle upon the highways of the state, it generally has been held that such a statute does not apply to accidents occurring completely off the public highway. (*Catalano* v. *Maddux* (1940), 175 Misc. 24 [22 N.Y.S.2d 149], collision on the World's Fair grounds; *Camden* v. *Harris* (Ark., 1953), 109 F.Supp. 311, road in a United States military reservation; *Rilling* v. *Jones* (Md., 1955), 130 F.Supp. 834, private driveway.) However, in *Galloway* v. *Wyatt Metal & Boiler Works* (1938), 189 La. 837 [181 So. 187], the court held a road owned by a corporation and never dedicated but used by the public was a highway of the state for purposes of the nonresident service statute, and in *Paduchik* v. *Mikoff* (1953), 158 Ohio St. 533 [110 N.E.2d 562], the court upheld service on a nonresident where the accident occurred on private farm property. It should be pointed out, though, that the Ohio statute does not use the phrase "operating a motor vehicle on the highways" of the state; it refers to a nonresident operating a motor vehicle "within the state." *Sipe* v. *Moyers* (1945), 353 Pa. 75 [44 A.2d 263, 264], is to the same effect. The Pennsylvania statute was similar to the Ohio one.

There are also cases holding that an accident in a service station is not one occurring while operating a motor vehicle on a public highway. (*Finn* v. *Schreiber* (N.Y., 1940), 35 F.Supp. 638.) There the nonresident drove his truck into a service station to have a flat tire changed. In the operation a lock rim of the spare tire was forced off due to a defective condition claimed to be known to the owner, injuring the plaintiff, the service station operator. (To the same effect, *Haughey* v. *Mineola Garage* (1940), 174 Misc. 332 [20 N.Y.S. 2d 857], where the accident occurred in a garage; and *Walton* v. *Stephens* (Va., 1954), 119 F.Supp. 1, where the accident occurred in a service station.

It seems to us, however, that the question here does not depend upon an interpretation of what is or is not a highway,* but is a question of whether or not the servicing of

---

*See, however, *Webster* v. *Zevin*, 77 Cal.App.2d 855 [176 P.2d 960], where the court held that section 402 of the Vehicle Code (imputing liability to owner, where person operating motor vehicle does so with owner's permission) applied to accidents on private property as well as on the public highway.

a motor vehicle in a service station en route is such a necessary incident to its operation that the entry into or exit from a service station must be considered as a part of and incidental to the operation of the vehicle upon the highways. As said in the McDonald case, *supra,* the normal operation of a vehicle includes more than its operation over the highway. It necessarily includes its obtaining the necessary fuel and servicing to operate it.

The purpose of this type of act should be considered. In *State ex rel. Gallagher* v. *District Court of Sixth Judicial Dist.* (1941), 112 Mont. 253 [114 P.2d 1047], the court said concerning the Montana nonresident service statute which requires operation on "a public way" of that state (pp. 1052-1053 [114 P.2d] : "It seems clear to us that the object of the act is to further the safety of highway traffic within the state and afford a practicable remedy for damage arising from negligence on the highways, by providing for service of summons within the state where it would otherwise be impossible, or virtually so." In *McDonald* v. *Superior Court, supra,* 43 Cal. 2d 621, the court said (p. 623) : "The obvious purpose of section 404 is to make amenable to suits in the courts of this state those nonresidents who may incur liability in the operation of motor vehicles upon the highways of this state. What constitutes operation within the meaning of the statute must be determined in the light of this objective."

In the light of this objective, is not the servicing of, and the obtaining of gasoline in, the car as incidental to its operation on the highway, as stopping to load and unload, to receive and deliver goods, to enable the driver to enter shops and stores, and to make brief business calls, as was stated in *Chiarello* v. *Guerin Special Motor Freight, supra,* 92 A.2d 136? Cannot the accident here be "attributed to the use of the highway" (*Brauer Machine & Supply Co.* v. *Parkhill Truck Co., supra,* 50 N.E.2d 836)? Without obtaining gasoline and being serviced occasionally the car could not be operated on the highway. The act of getting gasoline and service at a service station en route is as completely a part of the operation of the car as almost any other act in its operation. It certainly is as incidental, if not as integral, a part of its operation as was parking the car opposite the hotel in *Stoud* v. *Board of Water Comrs., supra,* 97 A. 336, even though that parking was on the highway itself.

The alternative writ is discharged and the petition denied.

Peters, P. J., and Wood (Fred B.), J., concurred.