No. 43,900

Victor Klein, *Appellee,* v. Roger Wells and Luther Wells, a Partnership, doing business as Supreme Feed Mills, Travelers Insurance Company and James R. England, *Appellants.*

(400 P. 2d 1002)

Opinion
filed April 10, 1965.

*Tudor W. Hampton,* of Great Bend, argued the cause, and *Norbert R. Dreiling,* of Hays, and *Jerry M. Ward* and *Herb Rohleder,* both of Great Bend, were with him on the brief for the appellants.

*F. F. Wasinger,* of Hays, argued the cause, and *Robert F. Glassman,* also of Hays, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a damage action for personal injuries sustained by Victor Klein (plaintiff-appellee) while unloading a truck owned by one of the defendants. The case was tried to a jury which returned a verdict for the plaintiff in the sum of $35,064.43, upon which judgment was entered, and appeal has been duly perfected.

Three questions are presented: (1) Whether the appellants were properly served with summons; (2) whether appellee's action was barred under the provisions of G. S. 1959 Supp., 44-504; and (3) whether the district court erred in permitting Dr. Norman Hull to give expert medical testimony over appellants' objections.

The pertinent facts may be briefly summarized as follows: The appellee's employer, Hays City Flour Mills in Hays, Kansas, ordered a load of 100-pound sacks of phosphate from Supreme Feed Mills of Glasgow, Kentucky (defendant-appellant). James R. England (defendant-appellant), an employee of Supreme Feed Mills, and another employee drove their employer's tractor and loaded trailer to Hays. They parked the trailer near a dock at the Hays City Flour Mills, and turned it over to the mill whose duty it was to unload.

There were three grain chute openings about twelve inches square in the floor of the trailer. Before the phosphate was loaded, the floor and grain chute openings were covered with brown paper. While the appellee and his fellow employees were unloading the phosphate, the appellee, who was pulling a loaded dolly, stepped into one of the concealed openings causing him to fall, resulting in the injuries complained of in this action.

The original petition naming Supreme Feed Mills, Travelers

Insurance Company and James R. England as defendants was filed on January 3, 1963. The petition was amended on May 21, 1963, following several pretrial motions to add Roger Wells and Luther Wells, a partnership, doing business under the firm name of Supreme Feed Mills, Glasgow, Kentucky, as defendants. (The above named parties will hereinafter be designated as appellants when referred to collectively.)

Service upon James R. England was obtained through the Secretary of State under the provisions of G. S. 1949, 8-401 and 8-402. Supreme Feed Mills was originally served as a corporation under G. S. 1959 Supp., 66-1314, and after the petition was amended, the additional parties named as defendants were served under the provisions of G. S. 1961 Supp., 17-504 and 66-1314, *supra.* Travelers Insurance Company was also served pursuant to 66-1314, *supra,* and 17-504, *supra.*

Each of the appellants individually filed a motion to quash service of summons on the ground that such process, purporting to comply with either 8-401, *supra,* or 66-1314, *supra,* was invalid for the reason:

". . . said statute applies only to actions growing out of the use or operation of a motor vehicle on a highway and said petition shows on its face that plaintiff's claimed damages occurred at and on private property."

These motions were overruled, and the appellants then filed a motion to strike and make more definite and certain, which was also overruled.

Thereafter, appellants individually filed demurrers to the appellee's petition on the ground, among others not here material, that said petition showed on its face that the appellee's action was barred by the statute of limitations. The demurrers were overruled, and appellants each filed an answer. Issues were joined and the action went to trial on October 29, 1963.

The appellants contend the motion to quash service upon England should have been sustained because the factual situation set forth in the petition was insufficient to invoke the jurisdiction of the district court under the provisions of 8-401 and 8-402, *supra.*

G. S. 1949, 8-401 provides:

"That the acceptance by a nonresident person of the rights and privileges conferred by existing laws to operate motor vehicles on the public highways of the state of Kansas, or the operation by a nonresident person, or his authorized chauffeur, or agent, of a motor vehicle on the said highways, other than under said laws, shall be deemed equivalent to an appointment by such non-

resident of the secretary of state of the state of Kansas, or his successor in office, to be his true and lawful agent, upon whom may be served all lawful process in any action or proceeding against said nonresident, growing out of any accident or collision in which said motor vehicle may be involved, while same is operated in the state of Kansas by said nonresident, or by his authorized chauffeur or agent; and said acceptance or operation of said vehicle shall be a signification of his agreement that any such process against him which is so served on the secretary of state shall be of the same legal force and validity as if served upon him personally within the state."

At the outset we should note that although 8-401, *supra,* was amended in 1959 and again in 1961, the language in the statute material to the question before us has not changed. Also, since no question is raised as to the regularity of service under 8-402, *supra,* it would serve no purpose to pursue this point.

Whether jurisdiction is acquired by service of process authorized under 8-401, *supra,* depends upon what is disclosed on the face of the petition itself. The petition before us, after the usual preliminary allegations concerning the parties, alleges:

"6. That on or about the 28th day of June, 1961, while plaintiff was in the employ of the Colorado Milling and Elevator Company of Denver, Colorado, at its district office in Hays, Kansas, and while he was in the performance of his duties on the job in behalf of his employer, the Colorado Milling and Elevator Company of Denver, Colorado, defendant, Supreme Feed Mills of Glasgow, Kentucky, by and through its agent and servant, defendant, James R. England, did haul and deliver unto the place of business of the district office in Hays, Kansas, of plaintiff's employer, Colorado Milling and Elevator Company of Denver, Colorado, a load of phosphate and soda wrapped in 100# bag containers in accordance with a prearranged buy and sell agreement between the plaintiff's employer, Colorado Milling and Elevator Company of Denver, Colorado, and defendant, Supreme Feed Mills of Glasgow, Kentucky; plaintiff did, thereupon, while in the performance of his duties as an employee of the Colorado Milling and Elevator Company of Denver, Colorado, at its district office in Hays, Kansas, assist in the unloading of said 100# bags of phosphate and soda from the bed of defendant's truck onto a dolly which the plaintiff was operating and using at said time and place and did further proceed to load said sacks from the bed of said truck in a careful and prudent manner and while said plaintiff was in the process of turning said dolly about on the bed of defendant's truck in order to transport said loaded sacks unto the dock of plaintiff's business place as instructed, when unbeknown to the plaintiff herein and without any warning from the defendant Supreme Feed Mills' agent and servant and driver of said defendant's truck, plaintiff stepped into a concealed hole in the bed of defendant's truck, said hole being concealed and camouflaged by the use of paper being spread over the hole so the same could not be seen or detected by persons walking on the bed of said truck causing plaintiff to suffer severe, permanent and irreparable personal injuries as is hereinafter more particularly set out."

The petition also alleges certain specific acts of negligence which are not relevant to the present issue.

The appellants maintain the petition shows the trailer was not on a public highway or being used or operated on a highway at the time of the accident, and therefore, said petition should have been quashed as to England inasmuch as the legislature intended to limit the scope of 8-401, *supra*, to only those accidents which occur upon the highways of the state. In other words, they claim the statute does not apply to any accident which occurs on private property.

The appellants rely on *Kelley v. Koetting*, 164 Kan. 542, 190 P. 2d 361, in which this court construed 8-401, *supra*, as applying only to those actions or proceedings to recover damages to person or property arising out of the use or operation of a motor vehicle by a nonresident on the highways of this state. In the opinion the court said:

". . . In our opinion the words 'out of any accident or collision' do not have the effect of enlarging or extending the act so that accidents or collisions in which a nonresident motorist is involved while exercising the privilege accorded all citizens, resident or nonresident, of transacting personal business on private property are to be regarded as within the scope of its provisions. . . ." (p. 548.)

It was not stated in *Kelley v. Koetting*, supra, that all accidents occurring on private property were automatically eliminated from within the scope of 8-401, *supra*. The fundamental question in the instant case is not whether the injury occurred on private property, but whether the loading or unloading of a motor vehicle at the dock is incident to its operation upon the highways. If the cause of the injury is in some way incident to the normal use and operation of a motor vehicle on the highways by a nonresident, then the place where the injury or damage to person or property actually occurs is immaterial.

The obvious purpose of 8-401, *supra*, is to make amenable to suits in the courts of this state those nonresidents who may incur liability as a result of the operation of their vehicles upon our highways. What constitutes "operation" within the meaning of the statute must be determined in light of this purpose.

It has frequently been recognized that normal operation of a motor vehicle includes more than its movement over the highways. (*Schefke v. Superior Court*, 136 Cal. App. 2d 715, 289 P. 2d 542 [1955]; *Chiarello v. Guerin Special Motor Freight*, 22 N. J. Super.

431, 92 A. 2d 136 [1952]; *Hurte v. Lane,* 166 F. Supp. 413 [N. D. Fla. 1958]; *Stroud v. Water Commissioners,* 90 Conn. 412, 97 Atl. 336 [1916]; and *Hand v. Frazer,* 248 N. Y. S. 557, 139 Misc. 446 [1931].) In *Stroud v. Water Commissioners,* supra, the court said:

". . . the plaintiff's car [parked on a city street] was as much in the ordinary course of operation on the highway at the time of the injury as if it had been used for shopping, calling, or *delivering merchandise.* . . ." (p. 415.) (Emphasis added.)

Another important consideration is that 8-401, *supra,* is not limited in its application to any particular *type* of accident or collision. By its express terms the statute is applicable to "any action or proceeding . . . growing out of any accident or collision in which said motor vehicle may be involved, while same is operated in the state of Kansas by said nonresident."

In our opinion the legislature never intended to limit the application of 8-401, *supra,* to only those vehicles involved in an accident or collision while in motion or at rest within the actual boundaries of a highway. To hold that 8-401, *supra,* does not encompass a factual situation such as we have before us would be unreasonable, and one contrary to the intention of the legislature which by the enactment of the statute has taken cognizance of the problem encountered by the operation of vehicles in this state by nonresidents. Therefore, we hold the motion to quash service upon England was properly overruled.

There is substantial authority to support this conclusion. The plaintiff in *McDonald v. Superior Court,* 43 Cal. 2d 621, 275 P. 2d 464 (1954), rented a truck from the defendant, a resident of Oregon, for the purpose of transporting a load of furniture to San Francisco. Plaintiff was injured while unloading the truck when a rack on the truck broke away from its supports. Plaintiff proceeded to obtain service upon the nonresident defendant through the California "long-arm statute" which applies to "any accident or collision resulting from the operation of any motor vehicle upon the highways of this state." (p. 623.) The defendant maintained service under the statute was invalid on the ground that unloading was not a part of the operation of the truck. The court held defendant amenable to service, and added that the normal operation of a vehicle includes more than its movement over the highway.

See, also, *Aranzullo v. Collins Packing Company,* 18 App. Div. 2d 1068, 239 N. Y. S. 2d 398 (1963); *Landolphi v. Wilhelmsen,* 241 N. Y. S. 2d 942, 39 Misc. 2d 950 (1963); *Schefke v. Superior*

*Court,* supra; and *Chiarello v. Guerin Special Motor Freight,* supra.

It should be emphasized we are not overruling our prior decision in *Kelley v. Koetting,* supra, where the nonresident defendant, who had operated his automobile upon the public highways of Kansas and was a professional combine harvester engaged in cutting the plaintiff's wheat, negligently drove his automobile into the plaintiff's wheatfield setting fire to twenty-one acres of uncut wheat. Driving an automobile through a wheatfield is not incident to its normal use or operation upon the highways of this state.

The appellants next contend service upon Supreme Feed Mills, pursuant to G. S. 1959 Supp., 66-1314, should have been quashed for the reason that said section does not apply where the accident occurs on private property or the causative factor does not relate to the use or operation of the vehicle. The petition in the instant case specifically alleges that the appellants were negligent in operating the truck with a defective bed upon the highways of the state of Kansas, contrary to the interests and safety of the public, contrary to the interests and safety of the plaintiff, and contrary to the provisions of 66-1314, *supra.*

G. S. 1959 Supp., 66-1314 provides in part:

"Every motor vehicle transporting passengers for compensation or property for which no permit has been issued . . . shall be properly covered by liability insurance . . . which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property *resulting from the negligent operation of said carrier.* The insured under said policy of liability insurance and the owner, proprietor, and driver of said vehicle and the firm, person, or corporation in whose service the same is being operated shall by sending said motor vehicle into the state of Kansas and making out and delivering the registration card required by law irrevocably appoint and constitute the secretary of the state of Kansas, process agent, for him, it, or them, upon whom service of summons may be made in any action filed in the proper court in the state of Kansas in the same manner as service is made upon a foreign corporation in the state of Kansas by serving process upon the secretary of state. No motor vehicle transporting passengers or property for compensation shall be allowed to proceed from any port of entry into the state of Kansas upon the highways thereof until and unless it has been duly registered and inspected at such port of entry or registration office and a clearance certificate issued therefor. . . ." (Emphasis added.)

Our previous discussion concerning the loading and unloading of a truck as being incident to its operation upon the highways would appear to settle this issue; however, there are some additional factors to consider when construing 66-1314, *supra.* The language contained in 66-1314, *supra,* unlike the construction placed upon

8-401, *supra*, in *Kelley v. Koetting*, supra, does not limit the application of the statute to those accidents arising out of the use or operation of a motor vehicle on the highways of the state. It is only necessary for the injuries to result "from the negligent operation of said carrier."

Although this court has not previously interpreted 66-1314, *supra*, it has at various times construed G. S. 1961 Supp., 66-1,128, which reads in part:

"No certificate, permit, or license shall be issued by the state corporation commission to any 'public motor carrier of property,' 'public motor carrier of passengers,' 'contract motor carrier of property or passengers,' or 'private motor carrier of property,' until and after such applicant shall have filed with, and after same has been approved by the state corporation commission, a liability insurance policy . . . which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons . . . *resulting from the negligent operation of such carrier.* . . ." (Emphasis added.)

The quoted statutes are cross-referenced in the 1961 Supplement to the General Statutes of Kansas, and it would appear both were enacted for the purpose of requiring persons using the Kansas highways as commercial carriers to provide sufficient insurance on their motor equipment to protect the public in case of injuries sustained from the negligent operation of such vehicles. The provisions of 66-1314, *supra*, apply to motor carriers without permits while the provisions of 66-1,128, *supra*, are applicable to those requiring a permit or license. Although 66-1,128, *supra*, does not provide for substituted service, such service upon nonresident defendants subject to that provision may be obtained through other statutes.

The important consideration is that almost identical language is contained in the statutes with reference to the negligent operation of a carrier. Since the statutes are quite similar in form and substance, and were enacted for substantially the same purpose, our prior decisions construing 66-1,128, *supra*, are material in determining rights and liabilities under 66-1314, *supra*. (*Bishop v. Board of County Commissioners*, 188 Kan. 603, 605, 364 P. 2d 65.)

This court has held that under 66-1,128, *supra*, it is immaterial whether the accident occurs while the carrier is being operated upon private property or upon a highway. (*Lamb v. Hartford Accident & Indemnity Co.*, 180 Kan. 157, 300 P. 2d 387; and *Amon v. Lueck*, 194 Kan. 89, 397 P. 2d 365.) In the *Lueck* case the court said:

". . . There can be no question but that the petition sufficiently alleged

that the accident occurred while the defendant Lueck was engaged in the operation of his business for which the permit was issued, and it is immaterial whether Lueck was operating his truck upon the public street or highway or on private property while engaged in the performance of a service under the permit issued. The statute specifically provides that the liability insurance shall bind the insurer to pay compensation for injuries to persons resulting from the *negligent operation of such carrier. It does not say from the negligent operation of the carrier while on the highway. Had the legislature intended to make such a limitation, it would have so provided.*" (p. 92.) (Emphasis added.)

In our opinion the foregoing reasoning is equally applicable to 66-1314, *supra,* and under such statute whether the accident occurs while the carrier is being operated upon private property or upon the highways is immaterial. We, therefore, hold the motion to quash filed by Supreme Feed Mills was properly overruled.

Appellants also contend the district court erred in overruling the motion to quash filed by Travelers Insurance Company. They cite the same authorities and make the same arguments that were made in support of the motion of Supreme Feed Mills.

It was held in *Fitzgerald v. Thompson,* 167 Kan. 87, 204 P. 2d 756, under 66-1,128, *supra,* the liability of an insurer who gives a liability insurance policy to enable a public or contract carrier of property or passengers to obtain a certificate or license as such, is a tort liability for the negligent operation of such carrier. In the opinion the court said.

"If the petition states a cause of action in tort against the permit holder and alleges the filing and approval of the liability policy it states a cause of action against the insurer. . . ." (p. 91.)

A holding to the same effect is *Amon v. Lueck,* supra.

The petition before us alleges Travelers issued its liability policy to Supreme Feed Mills as required by 66-1314, *supra,* as a condition precedent to the right of Supreme Feed Mills to transport its merchandise and products into the state of Kansas by a motor vehicle for which no permit had been issued. There is no sound reason why the liability of an insurer who gives a liability insurance policy to enable a carrier to enter the state and use its highways pursuant to 66-1314, *supra,* should be any different than the liability of an insurer who gives a liability insurance policy to enable a carrier to obtain a certificate or license under the provisions of 66-1,128, *supra.* Therefore, based upon our decisions in *Fitzgerald v. Thompson,* supra; *Lamb v. Hartford Accident & Indemnity Co.,* supra; and *Amon v. Lueck,* supra; and numerous other

decisions cited in those cases, we hold the liability of Travelers under the allegations of the instant petition, is a tort liability for the negligent operation of the carrier, and it is immaterial whether the accident occurs while the carrier is being operated upon a highway or upon private property. It follows the district court did not err in overruling Travelers' motion to quash.

Appellants contend the district court erred in overruling the demurrers filed by the appellants for the reason that the appellee's action was barred under G. S. 1959 Supp., 44-504, which provides in part:

"When the injury . . . for which compensation is payable under this act was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured workman . . . shall have the right to take compensation under the act and pursue his or their remedy by proper action in a court of competent jurisdiction against such other person. . . . Such action against the other party, if prosecuted by the workman, must be instituted within one (1) year from the date of the injury, . . . Failure on the part of the injured workman . . . to bring such action within the time herein specified, shall operate as an assignment to the employer of any cause of action in tort which the workman . . . may have against any other party for such injury . . . and such employer may enforce same in his own name or in the name of the workman, dependents or personal representatives for their benefit as their interest may appear by proper action in any court of competent jurisdiction. . . ."

As previously noted the accident occurred June 28, 1961, but suit was not filed until January 3, 1963. With regard to the parties bringing the action the petition states:

". . . plaintiff brings this action for himself, his employer, Colorado Milling and Elevator Company of Denver, Colorado, and his employer's insurance carrier, American Motorists Insurance Company, as their individual interests appear."

Since the petition sets out certain benefits received under the workmen's compensation act, appellants urge that under 44-504, *supra*, after one year has passed from the date of the injury, the sole right to bring the action is assigned to the employer who has the right to enforce the action in the employee's name or its own name, but that after the expiration of one year the injured workman is not authorized to be the moving party to bring the action for himself and others.

This court construed 44-504, *supra*, in *Sundgren v. Topeka Transportation Co.*, 178 Kan. 83, 283 P. 2d 444, where it stated:

". . . The statute was not enacted to relieve, alter or vary in any way the liability for the tort of the third party wrongdoer. (*Moeser v. Shunk*, 116 Kan. 247, 226 Pac. 784.) The liability of the tort-feasor remains the same for two years after the injury no matter who brings the action—the employee or the employer. Workmen's compensation statutes are to be liberally construed with the view of making effective the legislative intent and not for the purpose of nullifying it. (*Clifford v. Eacrett*, 163 Kan. 471, 183 P. 2d 861.)" (p. 88.)

The issue raised by appellants was decided in *Lady v. Ketchum*, 186 Kan. 614, 352 P. 2d 21, where the plaintiff brought an action for the wrongful death of her husband. Defendants in their answer maintained the plaintiff had received benefits under the workmen's compensation act, and that since her action against the third party was filed more than eighteen months after the injury occurred, her action was barred under the provisions of 44-504, *supra*. Plaintiff was allowed to amend her petition, and it was set out for the first time that her action was brought by:

"'. . . the Plaintiff on behalf of herself, her minor children, Security Milling Company, Inc., of Abilene, Kansas, and Lumberman's Mutual Casualty Company of Chicago, Illinois, as their interests may appear. . . .'" (p. 617).

Defendants argued on appeal that neither the deceased's employer nor its insurance carrier had at any time commenced an action, and that plaintiff's reference to them in her second amended petition was not in compliance with 44-504, *supra*, which authorizes the employer to bring the action in his own name or in the name of the dependents after eighteen months from the date of the injury of the deceased workman. Defendants claimed the second amended petition attempted to bring the action in a form and manner just opposite that authorized by the assignment portion of 44-504, *supra*. This court rejected the defendants' argument and in the opinion stated:

"We believe defendants' interpretation of the statute is too narrow. . . . We therefore hold the action was not barred. . . ." (p. 621.)

The above quoted language from the petition in the instant case compares favorably with that quoted from the petition in *Lady v. Ketchum*, supra. Therefore, we hold appellants' demurrers were properly overruled.

Error is predicated upon the action of the trial court in allowing Dr. Hull to give expert medical testimony over appellants' repeated objections. Appellants maintain the testimony of Dr. Hull was im-

proper inasmuch as it was based in part upon history given by the appellee, upon consultation with the attending physician, Dr. Brewer, upon Dr. Brewer's notes and records, and upon X-rays and hospital records.

It would serve no useful purpose to detail the evidence complained of. However, Dr. Hull testified in substance that he examined the appellee on October 28, 1963, for the purpose of testifying at the request of Dr. Brewer who was unable to appear at the trial; that he had consulted with Dr. Brewer and reviewed his office records; and that he had referred to the hospital records and X-rays. He further testified that plaintiff was suffering from a ruptured disc, and that in his opinion, plaintiff's disability for light work was about 10 to 15 percent as compared to 30 percent for heavy labor.

It has long been settled that an expert witness may base his opinion upon matters within his personal knowledge or observation, or upon competent evidence in the case, or upon both. Likewise, it has been held that a physician may not testify as to what a patient said in respect to past history of the case, or the cause or duration of the injury. Neither can he give an opinion based partially upon his personal examination and partially upon what the patient told him in reference to the past history of the case, and also upon statements of third persons in reference thereto. (*A. T. & S. F. Rld. Co. v. Frazier*, 27 Kan. 463; *Murphy v. Edgar Zinc. Co.*, 128 Kan. 524, 278 Pac. 764; *Priest v. Life Insurance Co.*, 116 Kan. 421, 227 Pac. 538; and *Van Pelt v. Richards Paint & Paper Co.*, 136 Kan. 212, 14 P. 2d 632.) The history of the case is within the hearsay rule and therefore is not a proper foundation for an opinion based on competent evidence. If, however, the so-called "history" is made up of facts which in themselves are competent evidence, and which are in evidence, then any objection to the use of such history must fall. (*State v. Keester*, 134 Kan. 64, 4 P. 2d 679.)

The record before us does not affirmatively show that Dr. Hull relied on the statements of the injured plaintiff, in making his findings, except that Dr. Hull testified plaintiff advised him of the date of the injury, and the circumstances leading up to it. The plaintiff had previously offered testimony concerning the date and circumstances of the accident. Therefore, it would appear the testimony of the doctor was competent in that the "history" upon which Dr. Hull based his opinion was made up of facts which constituted competent evidence in and of themselves—facts which had actually

been put in evidence in the course of the plaintiff's own testimony.

Appellants also object to Dr. Hull's testimony on the ground that it was based in part upon consultation with Dr. Brewer and upon examination of Dr. Brewer's records. There is no showing as to how or in what manner Dr. Hull's testimony was influenced by his consultation with Dr. Brewer. We have carefully examined this record and in our opinion there was ample medical evidence to support the judgment. To reverse this judgment because Dr. Hull may have based his opinion partially upon improper considerations, without any indication upon cross examination by the appellants as to how far those considerations affected his opinion, if at all, would be giving undue weight to what may have been only a technical inaccuracy. Dr. Hull was competent to testify as an expert from his personal examination of the appellee, and we think the record fails to show that his opinion was based upon information gathered from his consultation with Dr. Brewer to such a degree as to require a reversal of the judgment.

We have considered appellants' arguments concerning the hospital records and X-rays, but find them to be without sufficient merit to require comment.

Other assignments of error not heretofore mentioned have been reviewed together with the authorities cited in support thereof, but it does not affirmatively appear the appellants have been denied a fair trial or that such errors, if any, have prejudicially affected the substantial rights of the appellants.

The judgment of the lower court is affirmed.