No. 44,992

WILLIAM J. HOUK, JR., *Plaintiff* and *Appellee*, v. ARROW DRILLING COMPANY, *Defendant* and *Appellant*.

(439 P. 2d 146)

Opinion filed April 6, 1968.

*Keith M. Wilcox,* of Liberal, argued the cause, and *Richard Hickey* and *E. W. Hack,* of Liberal, were with him on the brief for appellant Arrow Drilling Company.

*Harold K. Greenleaf, Jr.,* of Liberal, argued the cause, and *Eugene L. Smith, Chas. Vance, H. Hobble, Jr., Rex A. Neubauer, Chester A. Nordling* and *Gene H. Sharp,* all of Liberal, were with him on the brief for plaintiff-appellee.

*Gene H. Sharp,* of Liberal, argued the cause, and *Chas. Vance, H. Hobble, Jr., Rex A. Neubauer, Chester A. Nordling* and *Kerry McQueen,* all of Liberal, were with him on the brief for cross-appellant Jake's Casing Crews, Inc.

The opinion of the court was delivered by

FATZER, J.: William J. Houk, Jr., brought this negligent third party action against the Arrow Drilling Company, Inc., pursuant to K. S. A. 44-504, and the district court entered judgment in his favor in the sum of $21,100.27, upon the jury's answers to special questions.

The defendant has appealed from the judgment entered, and from summary judgment discharging Jake's Casing Crews, Inc., the plaintiff's employer, as a party defendant. The plaintiff Houk has

cross-appealed from the entry of judgment in the sum of $21,100.27, notwithstanding the jury's special finding he sustained total damages in the sum of $25,850.00. Jake's Casing Crews, Inc., has also cross-appealed from the finding and judgment that its statutory right of subrogation for compensation and medical aid provided the plaintiff was terminated by the special finding of the jury.

The parties are hereafter referred as to follows: William J. Houk, Jr., as the plaintiff; the Arrow Drilling Company, Inc., as Arrow; Jake's Casing Crews, Inc., as Jake's Crew, and Petroleum Exploration, Inc., of Texas as Petroleum.

On September 4, 1963, the plaintiff sustained personal injuries in an industrial accident while employed by Jake's Crew on an oil and gas drilling location in Beaver County, Oklahoma, owned by Petroleum, of Amarillo, Texas. Petroleum contracted with Arrow to drill the Beaver County test well, and employed Jake's Crew to perform its specialized service to run casing in the well.

The plaintiff was provided workmen's compensation and medical aid by Jake's Crew and its insurance carrier in the sum of $9,449.46, and he commenced this action on July 25, 1965, more than one year, but less than two years, after the date of the injury.

The amended petition alleged that the plaintiff was employed by Jake's Crew, an independent contractor, on Arrow's drilling rig at the Beaver County test well, and as a result of Arrow's negligence he was injured and sustained permanent disability. The negligent acts of Arrow which were alleged need not be set out, and the amended petition also alleged the action was brought "in concert with his employer of that date, Jake's Casing Crews, Inc. and its insurance carrier for the benefit of the parties as their interest may appear in accordance with K. S. A. 44-504." The amended petition was signed by counsel for the plaintiff and Jake's Crew.

Arrow answered the plaintiff's amended petition and filed a counter-claim requesting that Jake's Crew be made a party defendant to respond to the amended petition and to Arrow's counter-claim against it. Arrow's answer generally denied the allegations of the amended petition. It specifically denied that Jake's Crew was an independent contractor, and alleged that Jake's Crew was a subcontractor to Arrow in executing the work which was a part of Arrow's trade or business and which Arrow had contracted to perform. It further alleged that plaintiff's sole remedy against Arrow was provided under the Kansas Workmen's Compensation Act,

specifically K. S. A. 44-503. The answer further alleged specific acts of contributory negligence on the part of the plaintiff.

In its counterclaim for interpleader, Arrow alleged that if the plaintiff was injured by a stand of falling pipe, the pipe was being moved by a pick-up cable which was not owned by it but was equipment owned and controlled exclusively by the plaintiff's employer and the subcontractor of Arrow, namely, Jake's Crew, and that Arrow was without knowledge of the previous condition of the pick-up cable; that if Arrow was liable for the plaintiff's injuries, it was entitled to be indemnified by Jake's Crew in the amount awarded to the plaintiff for damages, and the presence of Jake's Crew in the action was required for the granting of complete relief. The prayer was that Jake's Crew be made a party defendant to respond to plaintiff's amended petition and to Arrow's counterclaim against it, and that Arrow be given judgment aganst Jake's Crew in the event an award of damages was made in favor of the plaintiff; that the plaintiff take nothing in his claim for damages and that his amended petition be dismissed with prejudice.

On April 8, 1966, the district court sustained Jake's Crew's motion for summary judgment against Arrow upon the grounds that the plaintiff had recovered workmen's compensation benefits from Jake's Crew for the injuries he sustained in the accident and that the provisions of K. S. A. 44-501 prevent any other recovery being made against Jake's Crew because of said accident.

On April 19, 1966, the cause was tried to a jury which returned answers to special questions submitted by the district court. Those pertinent read:

"1. Do you find by a preponderance of the evidence that Plaintiff Houk's injuries were proximately caused by:

"a. The sole negligence of the defendant Arrow Drilling Company.

"ANSWER: No.

"b. The sole negligence of Jake's Casing Crew.

"ANSWER: No.

"c. The combined negligence of the Defendant Arrow Drilling Co. and Jake's Casing crew.

"ANSWER: Yes.

"d. The combined negligence of the Plaintiff Houk, Jake's Casing Crew and the defendant Arrow Drilling Company.

"ANSWER: No."

In answer to special question No. 2, the jury found the plaintiff sustained a total of $25,850.00 for various items of damages.

Thereafter, on May 6, 1966, the district court held that the

monetary interest of Jake's Crew in the litigation totaled $4,749.73 (pursuant to agreement between the plaintiff and Jake's Crew's insurance carrier); that the jury's answer to special question No. 1c found Jake's Crew guilty of negligence, which finding terminated its right of subrogation to any monetary interest in the litigation, and it was therefore entitled to none of the proceeds recovered by the plaintiff. Accordingly, the district court reduced the total amount of damages by $4,749.73, and rendered judgment for the plaintiff and against Arrow for $21,100.27.

The pertinent evidence introduced at the trial is summarized: On August 1, 1963, Petroleum contracted with Arrow to drill the test well to a depth not to exceed 7800 feet. Arrow was to furnish a complete rotary drill rig and all labor, material and supplies necessary to drill and case the well, except for items to be furnished by Petroleum specifically set forth in the contract. Arrow agreed to run 4½ inch casing to the depth specified by Petroleum, and to pay the wages of its employees and deduct their withholding taxes and social security. Petroleum agreed to furnish all surface and all oil string casing and pay Arrow "for waiting on casing," that is, for the drilling time it lost while waiting on a casing crew to run casing in the well, and for other materials or services to be furnished by Petroleum.

Jake's Crew performed special service in running casing in oil wells; it owned its own special tools, consisting of power tongs and slips, pipe slips, elevators, and pickup lines; maintained and repaired its own special equipment, and used its own fuel. It paid its employees and deducted withholding taxes and social security, and when employed to run casing, it brought its own special equipment to the site of the well, which was used in running casing.

On or about September 4, 1963, Petroleum employed Jake's Crew to run the 4½ inch casing in the test well. As was customary in the industry, Arrow's driller, Morris Talley, operated the draw works which in turn elevated and lowered a set of pulleys, commonly referred to as "blocks." The blocks raise the casing by the use of a twenty-foot pick-up cable from a ramp onto a catwalk and ultimately up into the derrick. Each joint of casing is about 30 feet long and weighs approximately 300 pounds. Before the casing is moved up into the derrick it is lying flat on the catwalk. The blocks are lowered and the V-door man fastens the pick-up cable to the upper end of a joint of casing and it is pulled through the V-door where he usually swings it against a rope to steady it.

The V-door man then unscrews the thread protector on the lower end of the casing which is being elevated. The casing is raised into the derrick and then lowered over the "hole" to the V-door man who places it into the "box" where it is threaded into the casing being held by "slips," and it is then lowered into the hole.

Jake's Crew owned the pick-up cable and the equipment being used in running the casing. The plaintiff was injured about 9:00 o'clock p. m. while he was performing his work as a V-door man in the normal fashion. The pick-up cable was fastened to the blocks and he looped it around the upper end of a joint of casing. As the casing was being drawn into the derrick the thread protector attached to the lower end caught on a defective bar in the base of the ramp with such force that the ⅝ths inch pick-up cable with a wire core, and tested to stand lifting capacity of over six tons, was pulled in two. The casing fell into the V-door, onto the plaintiff, and severely injured him. The bar or pipe at the base of the ramp had been eaten away over a period of time by continual pounding by the protector headings so that there was a half inch crack in the bar extending horizontally in which the protector head had caught, breaking the ⅝th inch cable by the pull of the blocks which had a lifting capacity of about 250,000 pounds.

The evidence was undisputed that neither Arrow nor its foreman gave the plaintiff any instructions as to his manner of work during the time he was on the rig before the casing fell. Likewise, the evidence was undisputed that the plaintiff received instructions only from the foreman of Jake's Crew and his wages were paid by Jake's Crew which withheld social security and taxes. In short, Jake's Crew and the plaintiff received no instructions from Arrow, and in turn, gave no instructions to Arrow's employees. Arrow's driller, Talley, testified he operated the draw works, and took instructions only from Arrow's "tool pusher." Moreover, there was no evidence of any contract between Arrow and Jake's Crew that the latter was hired, controlled, or paid by Arrow to run casing. The record is to the contrary—that Petroleum employed Jake's Crew to run the casing, and upon completion of the job, it paid Jake's Crew pursuant to their contract.

Arrow first contends that under K. S. A. 44-504 the plaintiff's claim for relief was assigned to Jake's Crew or its insurance carrier upon the passage of one year after the accident, and since the plaintiff failed to prosecute the action within that period, he lost the right to bring it in any form, and the district court erred in

overruling its motion for summary judgment. The point is not well taken. It is unnecessary to analyze the statute, since that was done in *Sundgren v. Topeka Transportation Co.*, 178 Kan. 83, 88, 283 P. 2d 444; *Lady v. Ketchum*, 186 Kan. 614, 621, 352 P. 2d 21; *Davis v. Reed*, 188 Kan. 159, 163, 164, 360 P. 2d 847, and *Klein v. Wells*, 194 Kan. 528, 400 P. 2d 1002, and we adhere to those decisions. In the *Klein* case it was held:

"Where the plaintiff bring a third party negligence action to recover for personal injuries pursuant to the provisions of G. S. 1959 Supp., 44-504, more than one year after the injury is sustained, but prior to the expiration of two years, and alleges the action is brought for himself, his employer, and his insurance carrier, as their individual interests appear, the action is not barred, following *Lady v. Ketchum*, 186 Kan. 614, 352 P. 2d 21." (Syl. ¶ 5.)

As indicated, the plaintiff alleged the action was brought in his name in concert with Jake's Crew and its insurance carrier "for the benefit of the parties as their interest may appear." Under the express provisions of the statute and our decisions construing it, that was sufficient to permit the plaintiff to bring the action in his name, and the district court did not err in overruling Arrow's motion for summary judgment.

Arrow next contends that the work being performed at the time of the plaintiff's accident was a part of its trade or business and the plaintiff could have proceeded against it to recover compensation for the injuries sustained while an employee of Jake's Crew. It argues the plaintiff was its statutory employee and that he may not maintain this common-law action against it since his sole remedy was under Section 44-503 (*a*) of the Workmen's Compensation Act. It cites and relies heavily upon *Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 231 P. 2d 239.

For reasons hereafter stated we are of the opinion the provisions of 44-503 (*a*) are inapplicable to this litigation. The statute provides in substance that where any person *contracts* with another person to do work, which is a part of the principal's trade or business, he shall be liable to pay compensation to any injured workman *employed in pursuance of the contract* to the same extent as though such workman had been immediately employed by the principal. (*Durnil v. Grant*, 187 Kan. 327, 333, 356 P. 2d 872.) It is to be noted we have no situation involving alleged negligent acts on the part of Petroleum. See *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219.

By the provisions of 44-503, protection is afforded to employees

who would not normally be considered within the common-law definition of an employee. Under factual situations where the statute is applicable, it has been said to create "statutory employees."

This court has repeatedly held that the rights and duties of all workmen and employers under the Workmen's Compensation Act are contractual in nature (*Davis v. Reed,* supra; *Roda v. Williams,* 195 Kan. 507, Syl. ¶ 5, 407 P. 2d 471), including the application of 44-503 (*a*). With respect to the latter, the rule is succinctly stated in *Schafer v. Kansas Soya Products Co.,* 187 Kan. 590, 358 P. 2d 737, as follows:

> "The fundamental premise upon which liability is predicated in the workmen's compensation act under 44-503 (*a*), *supra, is the existence of a contract between the two employers.* . . ." (l. c. 597.)

See, also, *Gilliland v. Kansas Soya Products Co.,* 189 Kan. 446, 450, 370 P. 2d 78.

In the instant case there was no evidence of any contract, express or implied, between Arrow and Jake's Crew to run the casing. The record is completely devoid of any suggestion that Arrow and Jake's Crew stood in the relationship of principal and subcontractor, or that the plaintiff was a statutory employee of Arrow under 44-503 (*a*), or that he was injured while employed in pursuance of any contract between Arrow and Jake's Crew. What the record overwhelmingly discloses is that Petroleum, as the owner of the lease, was the principal contractor and entered into separate independent contracts with Arrow and Jake's Crew for each to perform a specialized service for their common employer. When the plaintiff was injured, both were engaged in the work contemplated by their separate contracts with Petroleum. (*Coleman v. Patti Construction Co.,* 182 Kan. 53, 54, 318 P. 2d 1028.) As separate independent contractors, they were cooperating in carrying on the work they were employed to do—Arrow to drill the well, and Jake's Crew to run the casing. The employees of neither contractor were subject to the control of the other, nor were those employees engaged in doing work which the other contractor had been hired to perform. While those employees were to some degree working together to accomplish the common undertaking of Petroleum, they were each performing the separate tasks for which their employers had been hired to perform, and the closeness of their cooperation was not material.

Arrow makes the point that under its contract with Petroleum it was required to drill the test well and "to run casing to the depth specified." The record does not disclose what the parties intended by that provision of the contract, but in any event, it is devoid of any suggestion that Arrow contracted to perform the services which Jake's Crew ultimately performed. The evidence by both parties was undisputed that Arrow had not for many years engaged in running casing with its own crew or with a crew it employed for that purpose. (See 1A, Larson's Workmen's Compensation Law, § 49, 12, p. 872.) Petroleum agreed to pay Arrow for "waiting on casing," and while the casing was being run, Arrow merely operated the drilling rig for lowering it in the hole. The casing was furnished by Petroleum and the labor and tools for handling and lining it up, preparatory to lowering it in the hole and threading it after it was in place, were furnished by Jake's Crew pursuant to its separate contract with Petroleum, for which Jake's Crew was paid by Petroleum. The case of *Rota-Cone Oil Field Operating Co. v. Chamness*, 197 Okl. 103, 168 P. 2d 1007, supports the conclusion that Arrow and Jake's Crew were independent contractors and each was performing specialized services for its common employer.

Arrow's reliance on *Lessley v. Kansas Power & Light Co.*, supra, is not well founded. That was a common-law action by an employee of a subcontractor to recover damages for his personal injuries alleged to have been caused by the negligence of the power company, the principal contractor. There, *contracts* had been executed with persons to do work which was a part of the principal's trade or business, and the plaintiff was injured *while employed in pursuance of those contracts*. It was held that 44-503 (a) was applicable and that the exclusive remedy of the workman was under the Workmen's Compensation Act. Obviously, that is not the case here.

We are of the opinion the district court correctly concluded that Arrow and Jake's Crew were independent contractors employed by Petroleum. No useful purpose would be served in further discussing the question, and we hold the plaintiff was not a statutory employee of Arrow within the contemplation of 44-503 (a), and that he was authorized to maintain this action to recover damages against the negligent third party under 44-504.

Arrow makes the claim that the assumption of risk was an applicable defense in the instant case and that the district court erred in refusing its requested instruction No. 1 which reads:

"An employee assumes all the ordinary risks of employment known to him or which by the exercise of reasonable care he should have known."

We think the district court did not err in refusing to give the requested instruction. In *Perry v. Schmitt*, 184 Kan. 758, 762, 339 P. 2d 36, it was held that the assumption of risk is generally confined to master and servant situations. In *Schoof v. Byrd*, 197 Kan. 38, 415 P. 2d 384, it was said:

"Assumption of risk, in the law of master and servant, is a phrase commonly used to describe a term or condition in the contract of employment, either express or implied from the circumstances of the employment, by which the employee or servant agrees that certain dangers of injury, while he is engaged in the service for which he is hired, shall be at the risk of the employee or servant. (*Blackmore v. Auer*, 187 Kan. 434, 357 P. 2d 765.)" (1. c. 52.)

There was no evidence the relationship of master and servant existed between the plaintiff and Arrow and the doctrine of assumption of risk was not an issue in the case. Moreover, as has just been concluded, the plaintiff was not a statutory employee of Arrow, and we need not pass upon the question whether the doctrine of assumption of risk is a defense in a third party negligence action where that relationship is found to exist.

Arrow lastly contends the evidence was not sufficient to sustain the jury's finding that it was guilty of negligence which proximately caused the plaintiff's injuries. It would not add to the body of the law of this state to detail the testimony of the witnesses. The question whether Arrow's negligence was a proximate cause of the plaintiff's injuries was a question of fact to be determined by the jury. We have carefully reviewed the record and find there was ample evidence to sustain the jury's special finding that Arrow's negligence proximately caused the plaintiff's injuries.

The cross-appeals of both the plaintiff and Jake's Crew relate directly to the district court's submission of Jake's Crew's negligence to the jury, its finding of negligence in answer to special question 1c, the court's subsequent conclusion that such finding terminated Jake's Crew's right to enforce its statutory lien for compensation and medical aid in the amount of $4,749.73, the court's order reducing the plaintiff's total damages by such amount, and its entering judgment in favor of the plaintiff and against Arrow for $21,100.27.

The answer to the cross-appellant's contentions is found in 44-504 which reads, in part:

"When the injury . . . for which compensation is payable under this act was caused under circumstances *creating a legal liability against some person other than the employer to pay damages,* the injured workman . . . shall have the right to take compensation under the act and pursue his . . . remedy by proper action in a court of competent jurisdiction against such other person.

"In the event of recovery from such other person by the injured workman . . . by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by him to date of such recovery *and shall have a lien therefore against such recovery and the employer may intervene in any action to protect and enforce such lien. . . ."* (Emphasis supplied.)

The statute has been analyzed and construed many times and it has been held that the Workmen's Compensation Act did not abrogate the common-law and statutory right of action against a negligent third party. (*Roda v. Williams,* supra.) Further, section 44-501 fixes the liability of an employer to his employee where both parties are under the Act. The liability is in no sense founded upon tort, but is based upon the contract of employment and the statute, the terms of which are embodied in the contract. In short, the liability of an employer under 44-501 to provide compensation and medical aid to an employee injured in the course of his employment supersedes the employer's common-law liability for negligence. However, the Act does not attempt in any way to determine the rights of the employee with respect to the legal liability of "some person other than the employer" to pay damages, but permits the employee to pursue his common-law right of action for negligence caused by such "some other person." (*Moeser v. Shunk,* 116 Kan. 247, 226 Pac. 784; *Davis v. Reed,* supra; *Roda v. Williams,* supra; *Rumbaugh v. Vonfeldt,* 190 Kan. 798, 378 P. 2d 5; *Terrell v. Ready Mixed Concrete Co.,* 174 Kan. 633, 258 P. 2d 275; *Klein v. Wells,* supra; *Sundgren v. Topeka Transportation Co.,* supra.)

Moreover, when an action is brought in the name of the employee against a negligent third party pursuant to 44-504, compensation proceedings have no place in the trial of such an action, and the extent that the employer may participate therein is to intervene to protect and enforce his monetary lien for compensation and medical aid provided the employee to the date of recovery. While such an action requires adjustment between the employer and the employee in the event of recovery, neither the employer nor his insurance carrier may actively participate in the trial of such an

action. (*Davis v. Reed,* supra; *Gorrell v. Kansas Power & Light Co.,* 189 Kan. 374, 369 P. 2d 342.)

Giving consideration to the foregoing, the district court's submission of Jake's Crew's negligence to the jury was clearly improper. In the first place, this court has yet to sanction the trial of a person for alleged negligent conduct *in absentia.* Jake's Crew had previously been dismissed as a party defendant upon the grounds that, having provided the plaintiff compensation benefits under the Act, no further recovery could be made against it because of the accident. In the second place, we must assume the court was aware that Jake's Crew sustained no tort liability to the plaintiff by reason of its negligence, if any, and the only possible reason it could have had in submitting special question 1c, with respect to Jake's Crew, was that it concluded it would be inequitable and unjust to permit Jake's Crew to enforce its monetary lien in the litigation in the event the jury found its negligence proximately contributed to the accident. In the third place, assuming, *arguendo,* Jake's Crew was negligent, such a finding, if supported by competent evidence, would not abrogate its right to subrogation. The statute does not limit the employer's right therefor to those cases where the employer is shown to be free of negligence. It expressly declares otherwise; that is, that the employer "shall have a lien therefor against such recovery and . . . may intervene in any action to protect and enforce such lien." For what it may be worth, it may be said there is nothing in the record to support the jury's finding that Jake's Crew's negligence proximately contributed to the plaintiff's injuries.

In conclusion, we hold that, where an employer and his employee are both under the Act and the employee provides the injured workman benefits thereunder, 44-504 expressly gives the employer a lien on the first proceeds recovered by the injured workman from a negligent third party, which cannot be taken away by negligence on the part of an employer. (58 Am. Jur., Workmen's Compensation, § 366, p. 822.) Moreover, this court had repeatedly held that it is no defense in a negligent third party action that the workman has received compensation from his employer for the same injury (*Barker v. Zeckser,* 179 Kan. 596, 600, 296 P. 2d 1085; *Walta v. Bayer Construction Co.,* 185 Kan. 408, 345 P. 2d 631), and it is likewise no defense that the employer may have been negligent. The majority of the decisions which have considered the question

sustain that proposition. (*Liddle v. Collins Construction Company* [Mo.], 283 S. W. 2d 474; *Brown v. Arrington Const. Co.*, 74 Idaho 338, 262 P. 2d 789; *Clark v. Chicago, M., St. P. & P. R. Co.*, 214 Wis. 295, 252 N. W. 685; *Jackson v. Gleason, Appellant, et al.*, 320 Pa. 545, 182 A. 498; Anno. 106 A. L. R. 1040, 1055, 58 Am. Jur., Workmen's Compensation, § 359, p. 818.) Furthermore, Jake's Crew's liability to the plaintiff was statutory and contractual, while Arrow's liability to him was based upon negligence—tort liability— hence, Jake's Crew sustained no liability in common with Arrow and under no circumstances would it be liable for contribution. The claim sued upon belonged to the plaintiff and Jake's Crew or its insurance carrier as their interest may appear, and Arrow is liable for the full amount of damages as ascertained by the jury. It is no concern of Arrow what disposition is made of the proceeds of recovery as between the plaintiff and Jake's Crew. (*Davison v. Eby Construction Co.*, 169 Kan. 256, 259, 218 P. 2d 219.)

The judgment of the district court is reversed with directions to enter judgment in favor of the plaintiff in the amount of $25,850.00, and enforce Jake's Crew's statutory lien for compensation and medical aid in the amount of $4,749.73 on the first proceeds of that recovery.

It is so ordered.