**Clinton F. MILLER, Plaintiff-Appellee,**

v.

**LEAVENWORTH–JEFFERSON ELECTRIC COOPERATIVE, INC., Defendant-Appellant.**

**No. 79–1685.**

United States Court of Appeals, Tenth Circuit.

Argued Jan. 26, 1981.

Decided July 14, 1981.

---

Ralph E. Skoog, Topeka, Kan., for defendant-appellant.

Justice B. King of Fisher, Patterson, Sayler & Smith, Topeka, Kan., for plaintiff-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant Leavenworth-Jefferson Electric Cooperative, Inc. (Leavenworth) has appealed a $225,000 judgment in favor of plaintiff Clinton Miller for personal injuries he sustained when the boom on the truck he was operating contacted one of Leavenworth's high-voltage power lines. We affirm.

Almost 1¾ years after the accident, an action was commenced against Leavenworth in the United States District Court for Kansas, alleging that Miller's injuries had resulted essentially from the manner in which Leavenworth had strung its high-voltage power line and from its failure to insulate it or to otherwise post warnings about potential dangers. The complaint was styled "Clinton F. Miller, Plaintiff, vs. Leavenworth-Jefferson Electric Cooperative, Inc., Defendant." Rec., vol. I, at 1. It stated the jurisdictional predicate as diversity of citizenship, listing Leavenworth as a Kansas citizen and Miller as a California citizen. Paragraph 4 of the complaint stated:

> "This action is brought by Capitol Concrete Products, Inc., on behalf of itself and Clinton F. Miller, for their benefit and as their interests may appear, in accordance with K.S.A. 44-504."

Rec., vol. I, at 1. Capitol Concrete Products, Inc. (Capitol) was Miller's employer and the owner of the truck Miller was operating at the time of the accident. Since Miller was injured in the course of his employment, he had received roughly $15,000 in workmen's compensation through Capitol's insurer, Commercial Union Assurance Co., as provided by Kansas statutes. *See* Kan.Stat. §§ 44–501 *et seq.*

At trial, the district court applied Kansas' comparative negligence law, Kan.Stat. § 60–258a, and asked the jury to attribute percentages of fault to Miller, Leavenworth, and Capitol. The jury found Miller 10% at fault, Leavenworth 90%, and Capitol 0%. It returned a verdict of $250,000 total damages. Accordingly, the district court entered judgment in favor of Miller for $225,000.

Leavenworth reacted by filing two posttrial motions. In one, Leavenworth sought judgment n.o.v., or alternatively, a new trial, on two grounds: (1) the jury's 90%–10% fault allocation was wrong as a matter of law, and (2) the judge had erred in refusing to permit a certain witness to testify. The trial court denied the motion. Leavenworth's other motion claimed, for the first time, that Capitol was an indispensable par-

ty-plaintiff whose Kansas citizenship destroyed diversity and thus defeated jurisdiction in the district court. Miller cross-moved the trial court to hold that Capitol had never been a real or a named party to the action, or alternatively, to dismiss Capitol as an unnecessary party under Fed.R. Civ.P. 21. Such dismissal would preserve complete diversity. The trial court found it unnecessary to determine whether Capitol had formally become a party. It chose, instead, to dismiss Capitol under Rule 21. We agree with the district court's rulings in all respects.

### Timeliness of Appeal

Before considering Leavenworth's challenges to the decision below, we must consider Miller's contention that such challenges were not timely appealed as required by Fed.R.App. 4. The judgment on the jury's verdict was entered April 26, 1979. Within ten days, Leavenworth filed two motions without designating in either motion the specific provision in the Federal Rules of Civil Procedure relied upon. One motion sought judgment n.o.v. or a new trial. Thus, it was expressly permitted by Rules 50(b) and 59(a). The other motion was styled "Motion to Dismiss," Rec., vol. I, at 130, and essentially challenged diversity jurisdiction in the district court.

On May 23, the district court entered an order denying Leavenworth's motion for judgment n.o.v. or new trial, and set a date for a hearing on Leavenworth's jurisdictional motion. On June 18, the district court entered an order denying that motion as well. Leavenworth filed its notice of appeal on July 16, 1979.

Miller contends that the judgment n.o.v./new trial motion properly tolled the 30-day appeal period on the April 26 judgment, but that the "Motion to Dismiss" for

lack of diversity jurisdiction did not. In Miller's view, the jurisdictional motion was at most a "suggestion" under Fed.R.Civ.P. 12(h), which does not appear in the list of motions that toll the time to appeal under Fed.R.App.P. 4(a)(4). Thus, Miller concludes, the time to appeal in this case expired thirty days from May 23, when the trial court disposed of the motion for judgment n.o.v. or new trial. Leavenworth's notice of appeal filed on July 16 would, of course, be untimely under this reasoning.

Miller is correct that Leavenworth's "Motion to Dismiss" is a "suggestion" under Rule 12(h) that the court lacked subject matter jurisdiction, but that does not preclude it from being a Rule 59(e) motion. In effect, Leavenworth was asking the court to vacate the judgment, a type of motion which has been recognized as a Rule 59(e) motion to "alter or amend the judgment." *See, e. g., Silk v. Sandoval*, 435 F.2d 1266, 1267–68 (1st Cir.), *cert. denied*, 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (1971); *Sonnenblick-Goldman Corp. v. Nowalk*, 420 F.2d 858, 859 (3d Cir. 1970); *American Family Life Assurance Co. v. Planned Marketing Associates, Inc.*, 389 F.Supp. 1141, 1144 (E.D.Va.1974); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2817 (1973); 6A Moore's Federal Practice ¶ 59.12[1], at 250–51 (2d ed. 1979). In general, a post-judgment motion that questions the correctness of the judgment is properly treated as a Rule 59(e) motion if it is filed within ten days of entry of judgment. *See Dove v. Codesco*, 569 F.2d 807, 809 (4th Cir. 1978); 9 Moore's Federal Practice ¶ 204.12[1], at 4–67 (2d ed. 1980). In our opinion, Leavenworth's motion challenging subject matter jurisdiction for lack of diversity was a Rule 59(e) motion, tolling the time for appeal until disposed of by the district court.[1] Consequently, the July 16 notice of appeal was timely filed.

---

1. Contrary to Miller's reasoning, a notice of appeal filed between May 23 and June 18 would have raised problems of prematurity because during that period the trial court contemplated further proceedings: the hearing and

consideration of Leavenworth's "Motion to Dismiss." Thus, the April 26 judgment was not "final" in any practical sense under 28 U.S.C. § 1291. *See Century Laminating, Ltd. v. Montgomery*, 595 F.2d 563 (10th Cir. 1979).

### Diversity Jurisdiction

There is no dispute on appeal that for diversity purposes defendant Leavenworth and employer Capitol are citizens of Kansas, and that employee Miller is a citizen of California. The dispute centers essentially over the characterization of the present action in the complaint, later incorporated in the pretrial order, that "[t]he action is brought by Capitol Concrete Products, Inc., on behalf of itself and Clinton F. Miller, for their benefit and as their interest may appear, in accordance with K.S.A. 44504." Rec., vol. I, at 24–25 (pretrial order). This characterization tracks language in subsection (c) of the Kansas workmen's compensation statute, Kan.Stat. § 44–504. The entire section pertinently provides:

"(a) When the injury or death for which compensation is payable under [the workmen's compensation] act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured workman, his dependents or personal representatives shall have the right to take compensation under [the workmen's compensation] act and pursue his or their remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the event of recovery from such other person by the injured workman or the dependents or personal representatives of a deceased employee by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by him to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien .... Such action against the other party, if prosecuted by the workman, must be instituted within one (1) year from the date of the injury, and if prosecuted by the dependents or personal representatives of a deceased workman, must be instituted within eighteen (18) months from the date of such injury.

"(c) Failure on the part of the injured workman, or the dependents or personal representatives of a deceased workman to bring such action within the time herein specified, shall operate as an assignment to the employer of any cause of action in tort which the workman or the dependents or personal representatives of a deceased workman may have against any other party for such injury or death, *and such employer may enforce same in his own name or in the name of the workman, dependents or personal representatives for their benefit as their interest may appear by proper action in any court of competent jurisdiction....*"

Kan.Stat. § 44–504 (emphasis added).

Relying on this statute, Leavenworth contends that Capitol was a real, proper, and indispensable party in this action, not subject to dismissal as a nominal party under Fed.R.Civ.P. 21. Dropping Capitol was error, Leavenworth contends, in view of the following:

(1) Miller's injury occurred September 1975.

(2) Suit was filed more than one year thereafter, in May 1977. Miller's failure to sue within one year of September 1975 meant that the right to sue devolved upon Capitol as Miller's employer.

(3) Capitol exercised that right: The complaint and answers to interrogatories expressly concede that Capitol brought this action for its own and Miller's benefit according to their interests.

(4) The district court itself treated Capitol as a formal party, for it submitted to the jury the question of Capitol's fault pursuant to Kansas comparative negligence law, Kan.Stat. § 60–258a.

(5) In any event, Capitol has a subrogation interest to protect in this action, valued at $15,000, the workmen's compensation paid to Miller.

Were Capitol accorded status as a party plaintiff per Leavenworth's contentions, jurisdiction in the district court would be defeated under the hornbook rule requiring complete diversity. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).[2]

■ "Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if his presence in the action is not required under Rule 19." 7 C. Wright & A. Miller, Federal Practice and Procedure § 1685, at 332 (1972). *See, e. g., Jett v. Phillips & Associates,* 439 F.2d 987, 989–90 (10th Cir. 1971); *see also Oppenheim v. Sterling,* 368 F.2d 516, 518 (10th Cir. 1966), *cert. denied,* 386 U.S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441 (1967). We believe that the district court properly used Rule 21 in this case to drop Capitol from the action, thereby preserving its diversity jurisdiction. In view of this conclusion, it is unnecessary to decide whether Capitol ever formally became a party.

The language of assignment in Kan.Stat. § 44–504(c) suggests that since Miller failed to sue Leavenworth within a year after his injury, the right to sue devolved exclusively upon Capitol whose citizenship thus had to be considered in testing diversity. But despite the express language of assignment in section 44–504(c), the construction it has received in the Kansas courts has virtually eliminated any notion of true assignment, except perhaps when the employee shows no inclination to press his cause of action himself and the employer decides to do so in the employer's own name beyond the applicable time limitation of section 44–504(b).

The present case involves the one-year limitation in subsection (b). *See supra* p. 1381. Had Miller brought the action in his own name only, it would have been subject to dismissal as beyond the one-year period. *See, e. g., Turner v. Benton,* 183 Kan. 97,

325 P.2d 349, 353 (1958); *Erb v. Atchison, Topeka & Santa Fe Ry.,* 180 Kan. 60, 299 P.2d 35, 36–37 (1956); *Whitaker v. Douglas,* 179 Kan. 64, 292 P.2d 688, 693–94 (1956). But, from the Kansas cases, it appears that Miller could avoid the one-year limitation by simply taking the precaution of pleading his action as one for himself and Capitol, as their interests appeared. The Kansas Supreme Court said so in *Houk v. Arrow Drilling Co.,* 201 Kan. 81, 439 P.2d 146 (1968):

"Arrow [third-party tortfeasor] first contends that under K.S.A. 44–504 the plaintiff's [employee's] claim for relief was assigned to Jake's Crew [employer] or its insurance carrier upon the passage of one year after the accident, and since the plaintiff failed to prosecute the action within that period, he lost the right to bring it in any form, and the district court erred in overruling its motion for summary judgment. The point is not well taken. . . .

'Where the plaintiff brings a third party negligence action to recover for personal injuries pursuant to the provisions of G.S.1959 Supp., 44–504, more than one year after the injury is sustained, but prior to the expiration of two years, and alleges the action is brought for himself, his employer, and his insurance carrier, as their individual interests appear, the action is not barred, following *Lady v. Ketchum,* 186 Kan. 614, 352 P.2d 21.' (Syl. ¶ 5.)

"As indicated, the plaintiff alleged the action was brought in his name in concert with Jake's Crew and its insurance carrier 'for the benefit of the parties as their interest may appear.' Under the express provisions of the statute and our decisions construing it, that was sufficient to permit the plaintiff to bring the action in his name, and the district court did not err in overruling Arrow's motion for summary judgment."

*Basso v. Utah Power,* 495 F.2d 906, 909 (10th Cir. 1974).

---

**2.** Contrary to Miller's arguments, Leavenworth's jurisdictional challenges may be raised subsequent to trial. *See* Fed.R.Civ.P. 12(h);

*Id.* at 150–51 (*quoting Klein v. Wells,* 194 Kan. 528, 400 P.2d 1002, 1005 (1965)). And, at least when the employee's willingness to press his own claim is manifest, the employer is limited to little more than a nominal role:

> "Moreover, when an action is brought in the name of the employee against a negligent third party pursuant to 44–504, compensation proceedings have no place in the trial of such an action, and the extent that the employer may participate therein is to intervene to protect and enforce his monetary lien for compensation and medical aid provided the employee to the date of recovery. While such an action requires adjustment between the employer and the employee in the event of recovery, neither the employer nor his insurance carrier may actively participate in the trial of such an action."

*Houk,* 439 P.2d at 154 (citations omitted). This is so despite the employee's failure, as in *Houk,* to sue within the one-year period of section 44–504(b). *Cf. Beach v. M & N Modern Hydraulic Press Co.,* 428 F.Supp. 956, 959 (D.Kan.1977) (permitting employer and insurer to intervene solely to protect workmen's compensation statutory lien, but recognizing that such intervention does not accord privilege of participating at trial; employee's suit filed within one-year of injury).

In further support of its contention that Capitol was an indispensable party, Leavenworth points out that the question of the employer's possible fault was submitted to the jury along with everyone else's. But this is permissible, indeed required, whether the employer is or is not joined as a party. *See, e. g., Beach,* 428 F.Supp. at 966; *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867, 875–76 (1978); *cf. Stueve v. American Hon-*

da Motors Co., 457 F.Supp. 740, 749–51 (D.Kan.1978) (products liability suit by injured motorcyclist against motorcycle distributor and manufacturer; joinder of other driver denied but jury consideration of other driver's fault percentage mandated); *Greenwood v. McDonough Power Equipment, Inc.,* 437 F.Supp. 707, 709–11 (D.Kan. 1977) (victim of lawnmower mishap sued manufacturer; joinder of operator of lawnmower denied to preserve diversity, but jury consideration of operator's percentage of negligence mandated). *See also Scales v. St. Louis-San Francisco Ry.,* 2 Kan.App.2d 491, 582 P.2d 300, 306–07 (1978). The key point is that the percentage of the employer's fault is determined for the sole purpose of adjusting the liability of those against whom "recovery is allowed" under the Kansas comparative negligence statute, Kan. Stat. § 60–258a. In an action like the present one, an employer such as Capitol is simply not one against whom "recovery is allowed." *See* Kan.Stat. § 44–501; *Negley v. Massey Ferguson, Inc.,* 625 P.2d 472, 477 (Kan.1981).[3]

In sum, the judicial construction placed on the Kansas workmen's compensation statute shows that in every real sense the employee is the party with the right to enforce the claim, as well as the manner of its prosecution. It follows, as the district court correctly held, that an employer in a case such as this is the "most nominal of parties." Rec., vol. II, at 229. Even assuming arguendo that Capitol had actually become a formal party, dropping Capitol as a party in order to preserve complete diversity was a sound exercise of the trial court's discretion under Fed.R.Civ.P. 21.

### The Merits

Leavenworth asserts two challenges to the district court's decision on the merits.

---

**3.** Leavenworth also argues that Kansas' adoption of comparative negligence as a rule of tort liability, *see* Kan.Stat. § 60–258a, to replace its old common law rule of contributory negligence amended by implication the subrogation provisions of the workmen's compensation statute, Kan.Stat. § 44–504, and thus effec-

tively made the employer more than a nominal party in the employee's action against a negligent third party. This argument was recently addressed and held without merit in *Negley,* 625 P.2d at 475–76 (employer's statutory subrogation rights do not depend upon absence of concurring negligence by employer).

First, the evidence is legally insufficient to support the jury's 90%–10% attribution of fault between Leavenworth and Miller, respectively. Second, the lower court erred by refusing to permit the president of Capitol, a Mr. Ray Browning, to testify regarding safety instructions he had personally given to Miller about avoiding power lines when using the truck's delivery boom.

■ Regarding the jury's 90%–10% fault split, Leavenworth contends that no reasonable jury could have found Miller only 10% at fault under the present circumstances. Under Kansas comparative negligence law, the allocation of fault among responsible parties is a question for the factfinder. *See Brown*, 580 P.2d at 876; *Scales*, 582 P.2d at 306.

Viewed most favorably to the verdict, the evidence discloses the following. Miller's injuries occurred as he was making a delivery of bricks for a fireplace in the residence of Mr. Elmer Bailey. Miller backed the truck he was driving into Bailey's driveway. Miller then stepped out and began raising the truck's boom by means of an electrical switch box. Miller did not see one of Leavenworth's high-voltage power lines that crossed Bailey's driveway and that happened to be in the path of the circling boom. The line was uninsulated, and no signs were posted to warn of any dangers. As Miller maneuvered the boom through the air, the boom contacted the line and Miller received a severe electrical shock.

Leavenworth had erected the line in 1946 at the request of the former landowner, across what was then an open field. The request had been made to divert the line from its normal course along a roadway in order to protect certain trees. The line ran 23 feet above the ground. Roughly fourteen years later, in 1960, Bailey's residence and driveway were constructed. At that time, Leavenworth installed electrical service to the residence and thus became aware of the uninsulated power line. Periodic inspections reinforced the presence of the line to Leavenworth. Yet from 1960 until 1975, when Miller's accident occurred, Leavenworth did nothing to guard against the increased danger posed by an uninsulated high-voltage power line next to a residence. Leavenworth could have, for example, restored the power line to its normal, and safer, course along the roadway, since the trees that had prompted the line's deviation had been removed by 1970. Leavenworth had done some work on Bailey's residence in 1971 so it was aware of the trees' removal. As further examples, Leavenworth might have (1) insulated the line, (2) run the line underground, (3) raised the line to a height greater than its actual 23 feet, or (4) posted signs to warn of potential dangers. According to expert testimony, Leavenworth's failure to take any such practicable safety precautions violated several provisions in the National Electric Safety Code, among them this one:

> "All electric supply and communication lines and equipment shall be installed and maintained so as to reduce hazards to life as far as practicable."

Rec., vol. III, at 143.

Regarding the truck Miller was driving, the parties stipulated that Capitol, as Miller's employer and owner of the truck, had installed neither electrical grounding nor any other safety equipment to reduce hazards to a boom operator from possible contacts between boom and power line. However, the evidence also showed Leavenworth was or should have been aware that such unprotected vehicles might be used near its power lines.

Finally, regarding Miller's own conduct, the evidence showed that Miller was a fairly experienced deliveryman who had received safety instructions from Capitol's president, Mr. Browning, about the hazards of power lines. But the evidence also showed that the uninsulated line's location was unusual; that Miller did not remember anything about the entire accident; that, in any event, Miller could have reasonably failed to anticipate the line; and that Bailey who was standing by could not remember seeing the line.

■ Like the district court, we cannot say that no reasonable jury could have discounted Miller's and Capitol's shares of fault as it did and pinned 90% of the negli-

gence for the mishap on Leavenworth's failure to take practicable safety precautions against reasonably forseeable risks. It would thus invade the jury's province to disturb its verdict. *See Hidalgo Properties, Inc. v. Wachovia Mortgage Co.*, 617 F.2d 196, 198 (10th Cir. 1980); *Yazzie v. Sullivent*, 561 F.2d 183, 188 (10th Cir. 1977).

In addition to the legal sufficiency of the evidence, Leavenworth cites as error the trial court's refusal to let the president of Capitol, Ray Browning, testify that he personally warned Miller to avoid power lines when using the truck's boom. We cannot find any error in the trial court's refusal. Leavenworth tried to introduce Browning as a witness during the second day of trial even though Browning had never appeared on either side's witness list as required by the court's pretrial order. More significantly, Leavenworth had already elicited from Miller what it sought to elicit from Browning. On cross-examination, Miller unequivocally admitted that Browning had warned him to avoid power lines. Browning's testimony would have thus been cumulative and hence subject to exclusion at the trial court's discretion.

Affirmed.